State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

---

## FEBRUARY TERM, 1871.

THE STATE, THE HUDSON COUNTY LAND IMPROVEMENT COMPANY, MATTHEW ARMSTRONG, STEPHEN B. VREELAND, AND JACOB B. VREELAND, PROSECUTORS, v. JACOB O. SEYMOUR, PETER ROWE, JOHN H. MEDINER, JOHN TAYLOR, AND ROBERT DRAKE, COMMISSIONERS.

1. Under the constitution of 1844, and the act of the legislature of 1850, private property cannot be taken for public roads or streets without compensation being first made to the owner.

2. When, by legislative enactments, commissioners were appointed to survey and map the lands of the township of Greenville, in the county of Hudson, with a provision that when they should open streets for public use, compensation should be made to land-owners, the right to take at a future day is not such a present deprivation of property as to require immediate payment.

3. The appointment of commissioners for the purposes above mentioned, is within the power of the legislature. They, in effect, take the place of surveyors of the highways and overseers of roads, and map and lay down many roads at once, instead of one, in anticipation of future necessity. They are municipal officers, appointed by the legislature, instead of by the people, and their power to act, within certain necessary limitations, can hardly be doubted.

4. Although the means of obtaining compensation are not provided in the act, yet if the principle is admitted, or if it should be ineffectual, it will not invalidate the act; further legislation may remedy the defects, and no one will be deprived of his property until the method is provided to assess his damage.

State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

5. The Hudson Land Improvement Company hold their rights by special charter, under which they have purchased land, laid out the same in lots and streets, and filed maps of the same. The legislature cannot alter and widen the streets, or vacate them, for the purpose of making them public highways, without providing compensation and proceeding in the ordinary form of notification to all parties interested. Such action would be within the constitutional prohibition of taking private property for public use, and a disturbance of rights vested by express legislative sanction.

On *certiorari* to remove the proceedings of commissioners, &c.

Argued at February Term, 1871, before Justices SCUDDER and VAN SYCKEL.

For plaintiffs, *C. H. Winfield* and *I. W. Scudder.*

For defendants, *L. Abbett.*

The facts of the case are sufficiently stated in the opinion of the court.

SCUDDER, J.   The *certiorari* in this case brings up the proceedings of the defendants, who were appointed commissioners under a special statute, to map and define streets and avenues in the township of Greenville, in the county of Hudson, so far as they relate to the property of the prosecutors. These include all resolutions, acts, and proceedings passed, made, and had by said commissioners, touching and concerning the taking from the Hudson county clerk's office, and the township clerk's office of the township of Greenville, the maps filed by them in said offices, on the 4th day of October, 1869, and the alteration of the same, and the re-filing in said clerk's offices of a certain map entitled "Map of the township of Greenville, Hudson county, N. J., made by authority conferred by an act of the legislature, approved March 9th, 1870;" and also all resolutions, acts, and proceedings by them passed, made, and had, touching the laying out and opening,

State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

as well as the vacating of streets and avenues in conformity with said map, entitled as aforesaid or otherwise.

The reasons alleged for setting aside and annulling these proceedings are, that the map and surveys made by said commissioners are inaccurate, uncertain and insufficient; that certain streets and avenues laid out and partly opened were changed in location, and some were vacated, and existing streets and dedicated highways have been designated, and that thereby private property was taken without compensation ; that appraisers were appointed by resolution to report the compensation to owners of lands on several avenues, without notice or description of the land to be taken ; and did not file their report within thirty days after their appointment ; that the act of March 9th, 1869, is unconstitutional and void, because it enacts that the streets laid down on the map shall be open to public use, and that any street or avenue not laid down on said new map shall not continue to be a public street or avenue, for which the act does not provide compensation; and that certain resolutions passed, relating to the laying out of streets, are uncertain and incongruous; and there are no resolutions authorizing the laying out and locating certain other avenues.

It will not be necessary to consider all the reasons assigned, because some are mere sweeping charges, not sustained by the return and evidence, at least so far as relates to the lands and rights of the prosecutors. Only those points that are clearly presented by the papers will be considered.

The questions raised are—*First*, the legislative power to appoint these commissioners with such duty and authority ; *Second*, the manner of exercising such duty and authority.

By five several acts of the legislature, dated, respectively, April 2d, 1866, March 27th, 1868, March 9th, 1869, April 2d, 1869, and March 2d, 1870, the ordinary proceedings by surveyors of the highways and overseers of the roads were set aside, and five persons, by the title of " Commissioners of Surveys," and " The Street Commissioners of Greenville," were appointed, " to cause a full and accurate survey of the

lands in the township, and a map thereof, to be made, from which survey the said commissioners, or a majority of them, shall direct where roads, avenues, or streets shall or may be opened, said roads or streets not to be less than fifty nor more than eighty feet in width; and shall, immediately after such duty is performed, place said map, and a full report of their proceedings, which shall be kept by the town clerk, in the hands of the township committee."

The present commissioners, the defendants in this case, were appointed by statute of March 27th, 1868, to complete the map theretofore made by former commissioners, to supply omissions, correct errors, hear parties aggrieved by said maps, and grant such relief as, in their opinion, shall be to the interest of said township.

The map, so corrected, was to be filed, one copy in the county clerk's office and one copy in the town clerk's office.

It was also provided that all streets and avenues laid down on the new map shall be opened to public use; but any street or avenue not laid down on said map shall not continue to be a public street or avenue; and streets upon the old map which had been opened by public authority, and used by the public, shall be vacated, when compensation shall be made to any person whose access to the public streets or avenues is, by reason of such vacation, shut off.

By the third section of this act it is enacted that if, after the said new map shall be filed in the township clerk's office, improvements shall be made on lands within the lines of the streets and avenues thereon laid down and shown, compensation shall not be allowed for the same in estimating what shall be due to the owners of lands necessary to be used for such streets and avenues. Section ten provides for the opening of streets not already in use, by the commissioners, when they think proper, and the assessment for damages and benefits by three freeholders and residents, appointed by the commissioners. Section thirteen gives an appeal, in such cases, to the appraisers appointed by the Supreme Court.

The act of March 2d, 1870, authorizes the commissioners

State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

to take from the Hudson county clerk's office and the township clerk's office, the maps on file, and to correct and alter the same, as they may deem for the best interests of the township of Greenville, and thereafter to re-file the same in said offices within twenty days.

By the second section of this act, the said street commissioners shall, in addition to the rights and powers conferred on them by this act, have the same rights, powers, and authority, with reference to the streets and avenues laid down on said altered and corrected maps, and with reference to the improvement thereof, as they had with reference to the streets and avenues shown on said maps now on file in said offices, and the improvement thereof, under any acts now in force respecting said commissioners, or their rights, powers, or duties; all the streets and avenues which shall be laid down on said corrected and re-filed maps, shall be open to public use, and any street or avenue heretofore existing, and not laid down and shown on said corrected and re-filed maps, shall, from the date of said re-filing, cease to be a public street or avenue; immediately upon the re-filing of said maps, said commissioners may commence to improve the streets and avenues laid down thereon.

These are the main provisions of these several laws, which are important for consideration at this time.

Much difficulty has been caused in this case by the fact that five distinct acts have been passed to effect what might, and should, have been done in one. Care in the preparation, and a clear apprehension of what was designed, would have enabled the court to determine what the projectors intended, and to give effect to such intention, so far as could legally be done. It is impossible to avoid litigation and all the difficulties of uncertain interpretation, as long as several acts concerning the same subject matter are confused, and in apparent conflict, in most important provisions. This much should be said in explanation of the delay in announcing the opinion of the court in this case.

By reading these several acts together, it will be seen that

the scheme was, by act of the legislature, to map and lay out in streets, an entire township; and to place the opening and regulating those streets under the authority and control of five commissioners, appointed by the act. Streets dedicated and opened by others, not placed upon said map, were to be vacated as public streets.

The policy of this act is not a matter for the court to consider and determine; that belongs to the legislature. It is, however, thus stated in the preamble to section five of the act of March 9th, 1869: " Whereas, the unlimited power of private owners to lay out their lots and open streets wherever they choose, has been found to be very inconvenient, and to practically impose upon the public the repair of narrow and useless streets, and tends to retard the improvement of the township," &c. Whether this be a sufficient reason to justify the appointment of these commissioners, with such authority, will not be discussed; but we are called upon to decide whether the legislature can pass a law to survey and map the lands of individuals, and to open streets thereon, whenever, in the opinion of certain appointed commissioners, the public interest may require; and whether they can postpone compensation for such streets until they are actually opened.

It was argued against this authority that, by the constitution, Art. I., Sec. 16, private property shall not be taken for public use without just compensation, and that such mapping and surveying, with the right to control and open for public use in the future, is a present taking.

And, first, as to the right to take lands for public highways, without compensation.

This question is not fairly in the case, according to my construction of the provisions of these several acts; but it is necessary to consider it, as explanatory of the conclusions to which we have arrived. The section of the constitution referred to provides, by way of exception, that lands may be taken for public highways, as theretofore, until the legislature shall direct compensation to be made.

Prior to the adoption of this constitution, lands were taken

State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

for public highways, by legislative authority, without compensation. This power was claimed and enforced, both by right of eminent domain, and also because an allowance was made in the grants of the Proprietors of East and West Jersey, for public highways.

The old road acts, which gave no compensation for lands thus taken, were held to be constitutional. *State* v. *Potts*, 1 *South.* 347.

Such was the settled construction of our law, and it was acquiesced in by all, though the hardship and injustice of such deprivation of property was more noticeable as land became more densely settled, and later conveyances were made by strict measure.

In the new constitution this subject was still left under legislative control. It was not until the act of March 1st, 1850, that the surveyors of highways, in laying out roads, were required to adjudicate the damages to each land-owner.

After the legislature have thus, in exercising the discretion committed to them by the constitution, changed the policy of our law, in a matter so accordant with the principles of natural law and exact justice, I should be unwilling to hold that they could take a step backward, and thereby re-impose this onerous servitude upon private property. Much less willing would I be to say that the legislature could permit this public law to stand unrepealed upon our statute-book, and by exceptional legislation in certain localities, and these the most densely populated and valuable in our state, cause streets to be opened at the will of commissioners, without compensation to the owners of the lands.

But in this case there is no present taking of lands for highways without compensation. Surveying and mapping lands by legislative authority is not such taking. It is not even a trespass to go on lands for these purposes, where the right is thus given, much less can it be held to be a taking of property so to do. *Bonaparte* v. *C. & A. R. R. Co.*, *Bald.* 205 ; *Rogers* v. *Bradshaw*, 20 *Johns.* 735 ; *Muslow* v. *Gifford*, 6 *Cush.* 327.

The true construction of these acts is, that the commissioners shall survey and map the lands in this township, and whenever they open streets for public use, compensation shall be made to land-owners. This right to take in the future, upon making compensation, is not such a present deprivation of property as to require immediate payment, otherwise it might be necessary to make two assessments—one for present damages in surveying and mapping lands, with threatened occupation, and another whenever streets shall be opened for public use. The legislature have fixed the time of opening as the period of actual taking, and that is probably the better time to settle the full measure of damages.

But it is said that, by section three of the act of March 9th, 1869, a present charge is imposed on the lands within the lines of the streets and avenues, because after the filing of the map, no compensation shall be allowed for subsequent improvements within these lines, in estimating what shall be due to the owners of lands necessary to be used for such purposes. Admitting this to be so, the legality of such restriction in the enjoyment of property before the same is actually taken by condemnation and compensation, is not within the questions presented by this *certiorari*. Such restriction is separate from the power and authority given to the commissioners to map and survey these lands, and only incidental thereto, in the further prosecution of their work. It is not a fundamental objection, so as to make the whole act void, if such burdening of the land is within the constitutional prohibition to take private property for public use. This question will arise when damages are claimed and denied for such subsequent improvements, whenever taken in the opening of a street.

There are no reasons assigned that are sufficient, against the power of the legislature to appoint these commissioners, with the duties and authority given them. They, in effect, take the places of surveyors of the highways and overseers of roads, and map and lay down many roads at a time, instead of one, in anticipation of future public necessity. It

is, in principle, the ordinary delegation of legislative authority to choose public officers, who do these necessary and subordinate acts of administration. They are municipal officers selected by the legislature instead of by the people, which, however questionable the method may be in policy, is frequently exercised, and can hardly be doubted within certain necessary limitations.

That compensation is expressly provided for in these acts, reference may be had to section eleven, in act of April 2d, 1866. §§ 2, 6, 9, 10, 11, 12, 13, 14, 15, *in act of March 9th,* 1869, and others.

If it be said that section two of act of March 2d, 1870, is broader than others, and enacts in sweeping terms that "all the streets and avenues which shall be laid down on said corrected and re-filed maps, shall be open to public use, and any street or avenue heretofore existing, and not laid down and shown on said corrected and re-filed maps, shall, from the date of said re-filing, cease to be a public street or avenue; immediately upon the re-filing of said maps, said commissioners may commence to improve the streets and avenues laid down thereon"—it is answered that this section must be read with all the sections of the preceding acts, which prescribe the duties of the commissioners and provide for compensation. The particular purpose of this last act, as clearly expressed in the first section, is to correct and alter the maps filed, and establish the streets as thus corrected and altered, according to the provisions of the former acts; hence it is said in the beginning of the second section, that the said commissioners "shall, in addition to the rights and powers conferred on them by this act, [*i. e.,* to alter and correct the maps], have the same rights, powers, and authority, with reference to the streets and avenues laid down on said altered and corrected maps, and with reference to the improvement thereof, as they had with reference to streets and avenues shown on said maps now on file in said office, and the improvement thereof, under any acts now in force respecting said commissioners, or their rights, powers, or duties."

Reading this entire section, and drawing to it, for the purpose of construction, the former acts referred to, it is plain that there was no purpose to change the compensation to be made.

It is also urged that even if it be admitted that compensation is recognized in the acts, yet that the means of obtaining it are not provided, as will appear in section two of the act of March 9th, 1869 ; but if the principle of compensation is admitted in the act, then, if no method is appointed, or if it should be ineffectual, this will not invalidate the act, for the legislature can, by subsequent action, remedy this defect and no one will be deprived of his property until the method is provided to assess his damages.  *Bonaparte* v. *Camden & Amboy R. R. Co.; Morgan* v. *Monmouth Plank Road Co.*, 2 *Dutcher* 99.

It is also objected that the commissioners have not proceeded according to the statute in exercising the authority given to them. And, first, it is charged that the map and survey made by the commissioners are inaccurate and uncertain. The map produced is evidently made with care and skill, and although there are omissions as to distances and monuments, yet, with the descriptions filed in the clerk's office and the field notes of the surveyors, the scale on the map, and certain established monuments, such as the Central railroad, the old Bergen road, and the Morris canal, all running through this township and laid down upon the map, and the dotted lines representing the boundaries of certain well-known tracts of land, there can be no real difficulty in locating the map. As to mere alleged inaccuracies in the lengths and courses of some of the lines, these are almost unavoidable in the haste with which this large map was required to be prepared. It can hardly be seriously insisted that if the surveyors mislocate a street, or miscalculate a line, the whole map is thereby made illegal, and all the acts of the commissioners are in excess of their authority, and invalid. They have made a map which appears to be substantially correct, and according to the requirements of the statute. Its

defects, if any there be, can be readily cured by further legislative authority, as they may be advised.    It does not appear that at this time the substantial rights of the prosecutors are affected by any such alleged irregularities or mistakes.

There is also nothing in the point that the maps were taken from the clerk's office and altered after they had been filed, because it does not appear that this has been done since the re-filing under the act of 1870, and, for the purposes of that act, express authority was given therein so to do.

It is objected that the resolutions laying out streets are insufficient, and in some cases no resolutions were passed. This does not appear to be true by the return and evidence, at least not in the case of those streets in which the prosecutors are directly interested.

The same may be said of the alleged illegal form of assessment for damages where streets have been opened by authority of the commissioners.    If it should be made to appear that these assessments were irregular as to others, or even as to the prosecutors, this would not invalidate all the proceedings of the commissioners.

In answer to the reason for setting aside the proceedings of the commissioners, that the maps have not been approved by the board, it appears in the return that by a resolution of said board on August 31st, 1869, the map in controversy was approved and directed to be filed ; and further, that by resolution of said board on March 21st, 1870, the amended map was also formally approved and directed to be filed in the township and county clerks' offices.

It also appears by the return and evidence, that in every case where a street laid upon said map was directed to be opened, it was done by a formal vote of the board, and notices were directed to be given, pursuant to the statute; appended to the return, and forming part thereof, are affidavits, showing that such notices were given, and the parties interested were heard.    It also appears that in each case appraisers were appointed to assess the damages of the property owners, who made their reports.

If the return does not show all the facts·it was the duty of the prosecutors to except and have a further return made.

So far as the return and evidence show the official acts of the commissioners, they appear to have acted in accordance with the terms of the statutes, and fully answer the objections raised by the prosecutors against their formality.

The reasons assigned all appear to be to the proceedings preliminary to actual assessments made, as none of these are returned.

The most important general questions relating to the method of exerting their authority by the commissionersh aving been considered, it remains yet to determine the peculiar conse- quences under the statute, of the exercise of these powers, as they affect the lands of the prosecutors.

It does not appear that certain of them, viz. : Matthew Armstrong, Stephen B. Vreeland, and Jacob Vreeland, have any interest distinct from that of other property owners, whose lands are laid down upon said map, and over which proposed' streets have been laid.

The prosecutors, " The Hudson Land Improvement Com- pany," are in a different position as to their lands, which are included in this map made by the commissioners.

As to the complaint of the former individual prosecutors, that streets already existing are vacated and changed by the act of the commissioners, and no compensation is directed to be made, it is answered that if individuals lay out their lands in streets and avenues without public authority, or recogni- tion by acceptance or otherwise, then the legislature may declare such streets not to be public highways, without com- pensation, and cause others to be laid where they shall appear to be most for the public convenience.   As to the public, they may cease to be highways, while as between the grantors of lands bounding on such highways and their grantees, they may continue as private ways, and vested rights therein may remain.

It does not appear that in this case any public highways regularly laid, or recognized as such by public authority, are

State, Hudson Co. Land Imp. Co. et al., pros., v. Seymour et al., Com'rs.

vacated or materially changed, without provision being made for compensation.   *State* v. *Snedeker,* 1 *Vroom* 83.

The Hudson Land Improvement Company are incorporated by a special act of the legislature of this state, and are thereby authorized to purchase, hold, sell, and dispose of lands in the county of Hudson, and to improve such lands by laying out any portions which may lie in the township of Bergen (now Greenville) into lots, streets, squares, &c., leveling and grading the same, erecting buildings and improvements thereon.  *Laws,* 1855, *p.* 571.   Under this charter they have purchased lands in Greenville township, laid the same out in lots and streets, and filed a map of the same in the county clerk's office. After they have thus mapped and improved their land, the legislature cannot alter and widen their streets, or vacate them for the purpose of making other public highways, without providing compensation, and proceeding in the usual forms of notification to all parties interested.   This would be within the constitutional prohibition of taking private property for public use, and a disturbance of rights vested by express legislative sanction.   *In matter of Public Highway,* 2 *Zab.* 293 ; *Morris Canal and Banking Co.* v. *State,* 4 *Zab.* 62 ; *Glover* v. *Powell,* 2 *Stockt.* 211.

The return and evidence do not show that anything has been done affecting the streets and improvements of these prosecutors, besides mapping and changing the names of some of the streets, and altering some in width and in location. Whenever these changes are made effectual by actual taking and vacation, assessments must be made therefor.

If any assessments should be made contrary to law, and to the provisions of the statutes referred to, then by section fifteen of the act of March 9th, 1869, they may be reversed and set aside in this court, and here other appraisers and assessors may be appointed to examine and report anew.

The prosecutors have failed to establish their reasons for setting aside the proceedings of the commissioners, and the *certiorari* must be dismissed.

VAN SYCKEL, J., concurred.

Cited *in* State, *Gaines, pros.,* v. *Hudson Co. Av. Comm'rs,* 8 *Vr.* 22.