43 N.J. Super. 554 (1957)
129 A.2d 473
LAWRENCE SORBINO, ALGONQUIN REALTY CO., A CORPORATION, SAMUEL COHN AND F.S.F. REALTY CO., A CORPORATION, PLAINTIFFS,
v.
CITY OF NEW BRUNSWICK, A MUNICIPAL CORPORATION, THE HOUSING AUTHORITY OF THE CITY OF NEW BRUNSWICK, A BODY CORPORATE AND POLITIC, AND PLANNING BOARD OF THE CITY OF NEW BRUNSWICK, N.J., A MUNICIPAL AGENCY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 4, 1957.
*559 Messrs. Hannoch, Weinstein, Myers & Stern and Mr. Jacques S. Lederman, attorneys for plaintiffs.
Mr. Samuel D. Hoffman and Mr. Frederick F. Richardson, attorneys for defendants.
Mr. Grover C. Richman, Jr., Attorney-General (Mr. David D. Furman, Deputy Attorney-General, appearing), attorney for the State.
EWART, J.S.C.
The plaintiffs, property owners in the City of New Brunswick, have brought this suit in lieu of prerogative writ pursuant to the provisions of L. 1949, c. 187, § 9 (N.J.S.A. 40:55-21.1 et seq.) (and see also R.R. 4:88-2) to review, set aside and vacate findings and determinations of the planning board and of the governing body of the City of New Brunswick declaring and determining that the area comprising Blocks 104, 105, 117, 118 and 127 as shown on the official tax map of the city constitute a "blighted area" within the meaning of said L. 1949, c. 187. And plaintiffs further attack the constitutionality of said L. 1949, c. 187, and also seek damages allegedly suffered by them by reason of the alleged unlawful determination that plaintiffs' several properties are located in the so-called "blighted area."
The so-called "blighted area" is graphically shown on a map admitted in evidence as Exhibit D-9; comprises four *560 blocks, bounded on the east by the easterly side line of Burnet Street, bounded on the south by the southerly side line of New Street, bounded on the west by the westerly side line of George Street, and bounded on the north by the northerly side line of Richmond Street. In addition, there is also included in the so-called "blighted area" a small triangular public square, known as Monument Square, designated as Block 127 on the tax map, and bounded by the southerly side line of Schureman Street, the southerly side line of Livingston Avenue, and the westerly side line of George Street. Said small triangular public square has erected thereon a monument dedicated to veterans of the Civil War.
Plaintiffs contend that L. 1949, c. 187, violates both Art. III, par. 1 and Art. IV, Sec. I, par. 1 of the New Jersey Constitution of 1947 in that it fails to fix and establish reasonably adequate standards as a guide to municipal authorities to whom the act delegates legislative power; that the determination of "blight" authorized by said statute constitutes a "taking" for which compensation must be provided, but that the failure of the statute to provide for compensation to the property owners violates Art. I, par. 20 of the New Jersey Constitution; that the act in question constitutes special legislation in violation of Art. IV, Sec. VII, pars. 7 and 8 of the New Jersey Constitution; and that the said act violates the due process and equal protection clauses of both the 14th Amendment to the Federal Constitution and Art. I, pars. 1 and 5 of the New Jersey Constitution. Plaintiffs also contend that the title to the said act does not conform to the requirements of Art. IV, Sec. VII, par. 4 of the New Jersey Constitution in that the body of the act authorizes a carrying out of the redevelopment project by a private person or corporation, whereas there is nothing in the title of the act indicating any such provision.
Further, plaintiffs contend that the determination of "blight" made by the planning board of the city and approved by the governing body of the city is fatally defective in that there is included in the so-called "blighted area" properties, *561 including the properties of the plaintiffs, that are not in fact or in law "blighted" and that there was no substantial evidence to support a finding of blight with respect to some of said properties.
Further plaintiffs contend that the public hearing required by section 4 of the act in question (N.J.S.A. 40:55-21.4) was improper and illegal in that the hearing was carried on in a confused, arbitrary, unreasonable and unfair manner; that the planning board failed to limit the hearing to persons interested or who would be affected by the determination of blight and to confine the hearing to relative issues; the planning board failed and refused to hear interested persons and proofs in determination that the area was blighted; that the hearing was terminated before all persons interested in and opposed to the determination of "blight" were afforded an opportunity to be heard; and that the hearing in divers other respects did not comply with the requirements of the statute.
By written stipulation (Exhibit P-1), the parties agreed that plaintiffs are the owners of certain properties in the so-called "blighted area"; that the defendant city is a municipal corporation and the defendant housing authority is a body corporate and politic created by and an agency and instrumentality of the defendant city; that by ordinance adopted September 6, 1949 the city created, constituted, designated and authorized the housing authority to act as redevelopment agency of the city under the laws of New Jersey and to act as "Local Public Agency" under Titles 1 and 3 of the Federal Housing Act of 1949 (Public Law 171, 81st Congress) 42 U.S.C.A. §§ 1401 et seq., 1451 et seq.; that on December 13, 1954, in response to requests of said redevelopment agency and in purported compliance with L. 1949, c. 187 and the Federal Housing Act of 1949 (Public Law 171, 81st Congress), defendant planning board adopted a resolution determining a certain area to be a "blighted area" within the alleged meaning of L. 1949, c. 187; that on January 18, 1955 the governing body of the city adopted a resolution concurring in and approving the finding *562 of the planning board; that plaintiffs' properties are within the "blighted area" determined by the planning board; that the planning board did conduct a public hearing starting about 8 P.M. on December 1, 1954 and ending about 12:25 A.M. on December 2, 1954; and that all procedural statutory requirements respecting the steps leading to the public hearing, adopting of resolutions and findings and service of notices and service of true copies of the determination were complied with, excepting only that plaintiffs contend:
1. The resolution adopted by the city directing the defendant planning board as the agency to make determination of "blight" erroneously required a determination to be made in accordance with R.S. 40:55-21, an inapplicable statute.
2. The description employed in the notices and determination was vague and not clear.
3. The planning board determined that the area was "blighted" within the meaning of L. 1949, cc. 187 and 300, which was improper.
4. The report submitted by the planning board to the city commissioners was improper in that it failed to submit therewith full and complete minutes of the public hearing, its finding and reasons therefor, and names of all persons appearing before it.
5. The planning board improperly refused to adjourn the public hearing held December 1, 1954 to a fixed future date to be publicly announced; failed to announce at the conclusion of the said hearing whether the hearing was closed or adjourned and purported to adjourn the hearing solely for the purpose of making personal inspection of the allegedly "blighted area," but notwithstanding thereafter purported to afford objectors an invitation to submit additional factual data without, in fact, affording them such opportunity and then, without notice, called the adjourned public hearing to order.
It is further stipulated by counsel for the respective parties that certain enumerated documents, photographs, etc., be admitted in evidence and marked; that the exhibits mentioned were in fact considered by the planning board in *563 making its determination; that at the public hearing on December 1, 1954 counsel for the plaintiffs requested the planning board to conduct a personal inspection of the allegedly "blighted area," which inspection was made by the planning board accordingly; and a report of such inspection was filed as part of the planning board's report and findings. Also stipulated that no stenographic transcript of testimony and proceedings at the public hearing was requested to be made by the plaintiffs; that such transcript as was made was ordered by and for the private use of the planning board; that the transcript ordered by the planning board shall be marked in evidence as an exhibit by consent of the parties; that such transcript be supplemented by marking in evidence prepared statements of Robert E. Ross II and Samuel Hoffman, which, it was agreed, were read in full at the public hearing on December 1, 1954; that the said transcript is incomplete and that both parties reserved the right to introduce further evidence of the matters and things said and done at the said public hearing; and that no transcript of the said hearing was filed by the planning board with the city commission or with the city clerk. Also stipulated that no final approval of the proposed redevelopment project affecting the allegedly "blighted area" has been received from the federal authorities up to the date of the stipulation, and that the resolution of the city commissioners approving and concurring in the findings of the planning board was adopted on January 18, 1955 and shall be admitted and marked in evidence by consent.
In addition to the facts stipulated as above, from the pleadings, proofs, exhibits and also from my personal inspection of the allegedly "blighted area," made in company with counsel for the respective parties, I find that the area in question constitutes one of the oldest sections of the City of New Brunswick, that except for a few individual structures scattered throughout the area in question and except for the George Street frontage hereafter mentioned, the buildings generally in the area are very old, present a dilapidated and sorry appearance, are crowded together with *564 inadequate space for light and air, many of the buildings obviously constitute fire hazards, large numbers of tenants of mixed racial origin occupy the old dilapidated structures as living quarters (presumably because of low rentals), and generally the physical conditions throughout the area may fairly be characterized as constituting a hazard to health, safety and good morals. I think it no exaggeration to describe the area generally, excepting the frontage on George Street, as a festering sore in an otherwise attractive city.
Photographs admitted in evidence and marked respectively Exhibits D-21(a), D-21(b), D-21(c), D-21(d), D-21(e), D-21(f), D-21(g), and D-21(h), all bear witness to the conditions above described.
Included in the so-called "blighted area" are two blocks extending from New Street to Liberty Street, along the easterly side of George Street. George Street is the principal, or at least one of the principal retail shopping streets in the City of New Brunswick. There are seven separate buildings or structures within the two blocks fronting the east side of George Street, three of which may be described as structurally sound buildings, although quite old, and the remaining four of which are very old and obsolete. Most of the lots fronting George Street are of very shallow depth as indicated by Exhibit D-9. The dilapidated condition of buildings and the conditions constituting a slum area cannot properly be ascribed to the buildings within the two blocks fronting the east side of George Street above mentioned. However, those buildings on the easterly side of George Street within the two blocks mentioned constitute a sort of a front for the terribly depressing conditions existing immediately in their rear, and it is difficult to conceive how a redevelopment of the "blighted area" could well be accomplished without including therein the George Street frontage. In fact, George Street would appear to constitute the only natural boundary line along the westerly side of the "blighted area." It would be highly impracticable to adopt the rear property line of the properties fronting on the easterly side of George Street as the westerly boundary *565 line of the "blighted area," because to do so would produce a highly irregular line, with sharp angles, which at some points would come within less than 50 feet of the established easterly line of George Street.
Nor can the small triangular plot adorned by the monument spoken of above, bounded by George Street, Schureman Street and Livingston Avenue and designated as Block 127 (Exhibit D-9) be properly described as a "blighted area." However, the redevelopment plan that has been formulated for this whole area does not contemplate elimination of either the small triangular park nor destruction of the existing monument, but merely contemplates a slight shifting of the position of the park and monument in connection with the realignment of certain streets as a part of the redevelopment plan.

CONSTITUTIONALITY OF L. 1949, c. 187

(N.J.S.A. 40:55-21.1 et seq.)
Plaintiffs attack the constitutionality of the statute upon several grounds mentioned and dealt with below.
A reading of the act and its title will disclose that it has as its objective the elimination of slum areas from our urban centers and the redevelopment of such areas by clearance, replanning and redevelopment. Section 1 of the act particularly defines the conditions which shall constitute a "blighted area," and upon determination that such "blighted area" exists, other sections of the act authorize the municipality to acquire and take over the properties in such "blighted area" by purchase or by eminent domain proceedings as the first step in the elimination of slums and the redevelopment of the area. Companion legislation of L. 1949, c. 187 is the local Housing Authorities Act of 1938, as supplemented by L. 1949, c. 300, N.J.S.A. 55:14A-31 et seq.
Financing in part the costs of such clearance and redevelopment of "blighted areas" by the Federal Government is provided for under the Federal Housing Act of 1949 (P.L. *566 171, 81st Congress; 42 U.S.C.A., §§ 1441, 1451-1454). The full text of the Federal Housing Act of 1949 will be found in 1 U.S. Code Congressional Service, 81st Congress, 1st Session 1949, pp. 408-438. And a full explanation of the purposes and reasons for the act will be found in the reports of the Senate Committee, the House Committee, and the Conference Committee, 2 U.S. Code Congressional Service, 81st Congress, 1st Session, 1949, pp. 1550-1589.
The two New Jersey statutes mentioned provide alternative schemes for the acquisition of "blighted areas" by condemnation for the public purposes of the clearance of slum areas and the redevelopment of such areas. A municipality may proceed under the provisions of L. 1949, c. 187, or under the provisions of the local Housing Authority Act of 1938 as amended, supra, upon approval of the redevelopment plan by the municipal governing body.
Concerning the constitutionality of L. 1949, c. 187, it is to be borne in mind that aside from any constitutional grant of authority, every sovereign state possesses inherent power to enact legislation essential to the protection of public health, safety and welfare. Mansfield & Swett v. Town of West Orange, 120 N.J.L. 145 (Sup. Ct. 1938); N.J. Good Humor, Inc., v. Board of Com'rs of Borough of Bradley Beach, 124 N.J.L. 162, 168, 169 (E. & A. 1939); Reingold v. Harper, 6 N.J. 182, 190, 194 (1951); 11 Am. Jur., pp. 966-967.
In addition to the inherent power of the State to legislate upon the subjects mentioned, Art. VIII, Sec. III, par. 1 of the 1947 Constitution declares:
"1. The clearance, replanning, development or redevelopment of blighted areas shall be a public purpose and public use, for which private property may be taken or acquired. Municipal, public or private corporations may be authorized by law to undertake such clearance, replanning, development or redevelopment; * * *."
Furthermore, the law indulges a presumption that a statute duly enacted by the Legislature is constitutional unless it clearly appears and there is no room for doubt as *567 to its violation of constitutional provisions. Consequently it is the duty of the court to sustain and uphold legislation unless a constitutional violation is manifest. Wilentz v. Hendrickson, 133 N.J. Eq. 447, 457 (Ch. 1943); Reingold v. Harper, 6 N.J. 182, 194 (1951); Behnke v. New Jersey Highway Authority, 25 N.J. Super. 149, 170 (Ch. Div. 1953), affirmed 13 N.J. 14, 25 (1953); Magierowski v. Buckley, 39 N.J. Super. 534, 556 (App. Div. 1956); Fifth Street Pier Corp v. City of Hoboken, 40 N.J. Super. 12, 18 (App. Div. 1956); Gundaker Central Motors v. Gassert, 23 N.J. 71, 81 (1957).
Taking up the arguments made by plaintiffs against the constitutionality of the act, their several points are dealt with as follows:
FIRST: Plaintiffs contend that the act constitutes an unlawful delegation of legislative power in violation of Art. IV, Sec. I, par. 1, which vests legislative power in the Senate and General Assembly, in that the act delegates such power to municipal agencies without prescribing adequate standards for the exercise of the delegated power.
Reference to the act (N.J.S.A. 40:55-21.1 et seq.) will disclose that it confers upon a municipality, or the planning board of such municipality, power to conduct preliminary investigations of any area thought to be "blighted"; authority to have a map prepared of the area to be investigated; authority to conduct public hearings on notice, at which all persons interested shall be afforded an opportunity to be heard; authority to consider any written objections that may be filed; and power and authority to make a finding or determination as to whether or not the area, or any portion thereof, is "blighted" within the meaning of that term as defined by the act.
Section 1 of the act particularly defines and prescribes the conditions that must be found to exist before an area may be determined to be "blighted," and thus sets up a basic standard to guide, limit and control the municipal agency authorized to conduct the investigation and hearing and to make the factual determination. And section 6 of *568 the act contemplates that the determination of "blight" must be supported by substantial evidence. And it should be borne in mind that it is not the finding or determination of "blight" that creates the condition; that it is the existing physical conditions which create slums or "blighted areas"; that the function of the municipal agency in conducting an investigation and hearing and in reaching a determination is merely to determine and declare whether or not such conditions exist as to constitute a "blighted area" within the definition of the act.
There can be no doubt that the Legislature may lawfully delegate to some governmental instrumentality or agency or public official power to conduct hearings, to make findings of fact, and to make subordinate rules or orders within the defined standards and policies prescribed by the statute containing the delegation of power. West Jersey & S.R. Co. v. Board of Public Utility Commissioners, 87 N.J.L. 170 (E. & A. 1915); State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935); Veix v. Seneca B. & L. Assoc. of Newark, 126 N.J.L. 314 (E. & A. 1941); State, by Van Riper, v. Traffic Telephone Workers' Federation, 2 N.J. 335 (1949).
Legislative delegation of power to conduct an investigation and to make determinations of fact have been many times sustained as valid provided only that adequate standards are set up. Similar legislation for the clearance of slums and redevelopment of slum areas containing like delegations of legislative power has been sustained against attacks on constitutional grounds. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A.2d 277, 172 A.L.R. 953 (Sup. Ct. 1947).
Many additional reported decisions are cited in defendants' brief in support of similar legislation in other jurisdictions, but it is deemed unnecessary to repeat those citations here.
Suffice to say that I conclude that section 1 of the act in question particularly defines and prescribes the conditions that must be found to exist before an area may be *569 said to be "blighted," and hence the statute does prescribe adequate standards to govern and control the municipal agency in determining whether or not a given area is "blighted."
SECOND: Plaintiffs contend that the determination of "blight" by the planning board and governing body of the City of New Brunswick, constitutes a "taking" of their properties for which just compensation must be provided, under Art. I, par. 20, of the 1947 Constitution, but that in fact the said act contains no provision for compensating the property owners.
I cannot agree with the contention of plaintiffs. A finding and determination after hearing and notice that the area in question is a "blighted area" as defined by the act is not a "taking" of private property. It is merely a determination that the conditions enumerated in section 1 of the act exist, and lays a foundation for a subsequent "taking" of property either by purchase or by eminent domain proceedings. N.J.S.A. 40:55-21.10.
Plaintiffs have not been deprived of the possession, control, use, management and enjoyment of their respective properties. The mere determination that the area in which plaintiffs' properties are situate is a "blighted area," may or may not lead to subsequent acquisition by the city of the area for clearance, development and redevelopment. N.J.S.A. 40:55-21.10. Cf. State v. Seymour, 35 N.J.L. 47 (Sup. Ct. 1871); Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270, 290-292.
Plaintiffs contend that the determination of "blight" has adversely affected the market value of their properties, but a reduction or increase in the market value of property occurring by reason of legislation authorizing some public project are mere incidents of ownership and cannot be considered a "taking" in the constitutional sense. Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939). Injury to private property ensuing from governmental action within a proper sphere, reasonably taken for the public good, is not necessarily to be classed as *570 a "taking" of such property within the meaning of the constitutional provision. Mansfield & Swett v. Town of West Orange, supra.
Even the institution of condemnation proceedings subsequently abandoned does not give rise to a cause of action for damages on the part of the property owner. Kean v. Union County Park Commission, 130 N.J. Eq. 591 (E. & A. 1941). Nor does the decision of the condemning authority to acquire private property by eminent domain proceedings constitute a "taking" or involve any question of due process. People ex rel. Gutknecht v. City of Chicago, 414 Ill. 600, 111 N.E.2d 626 (Sup. Ct. 1953); Eckhoff v. Forest Preserve District of Cook County, 377 Ill. 208, 36 N.E.2d 245 (Sup. Ct. 1941).
Accordingly, I conclude that the mere determination by the municipal authorities that the area in question constitutes a "blighted area" is not a "taking" in the constitutional sense; does not entitle plaintiffs to compensation as in case of an actual "taking" for public use; and that there is no necessity for including in the act under attack provision to compensate the owners of property because of a mere determination that a given area is "blighted."
THIRD: At some point in the proceeding plaintiffs urged that the act in question constitutes special legislation in violation of Art. IV, Sec. VII, pars. 7 and 8 of the 1947 Constitution, relating to private, special or local laws. It is my recollection that that point was not seriously urged.
In any event, the act (L. 1949, c. 187) is certainly general and not special or private in character; embraces every municipality in the State in which conditions of "blight" may be found to exist; and I can see no basis for argument under this particular point.
FOURTH: Plaintiffs contend that the title of the act does not conform to the requirements of Art. IV, Sec. VII, par. 4 of the Constitution because the body of the act authorizes the carrying out of the redevelopment by a private person or private corporation, whereas there is nothing in the title indicating the presence of any such provisions.
*571 Art. VIII, Sec. III, par. 1 of the 1947 Constitution provides that the municipal, public or private corporations may be authorized by law to undertake such clearance, replanning, development, or redevelopment. And section 10 of the act (N.J.S.A. 40:52-21.10) provides that the governing body may, by resolution, agree that a private corporation may undertake such clearance, replanning, development or redevelopment in accordance with statutory authority and subject to the provisions of the Constitution aforesaid.
The title of the act reads:
"An Act defining `blighted area,' authorizing municipalities to determine that areas are blighted areas, and to undertake the clearance, replanning, development and redevelopment of such areas."
True, Art. IV, Sec. VII, par. 4 of the 1947 Constitution provides in substance that every law shall embrace but one object, which shall be expressed in its title, and there is nothing in the title of the act concerning the doing of the work by a private corporation. However, the provision authorizing the governing body by resolution to have a private corporation undertake such clearance, development or redevelopment is but one method or means of attaining the general object of the act.
The constitutional requirement respecting the title of the statute is satisfied when it fairly indicates the general object of the act without declaring the means or method of attaining that object. Ringer v. City of Paterson, 98 N.J.L. 455 (E. & A. 1923); City of Trenton v. Lenzner, 16 N.J. 465 (1954). It is not necessary that the title constitute an index to the contents of the statute. A title is sufficient if it be merely a label stating generally the subject matter of the enactment. Bucino v. Malone, 12 N.J. 330 (1953); General Public Loan Corp. v. Director of Division of Taxation, 13 N.J. 393, 402 (1953).
In the case at bar, the title of the act (N.J.S.A. 40:55-21.1) fairly points out the general purposes sought to be accomplished by the act and is therefore sufficient to *572 satisfy the constitutional requirement. State v. Guida, 119 N.J.L. 464 (E. & A. 1938).
On this point, I conclude that the title of the act is sufficient to satisfy the constitutional provision found in Art. IV, Sec. VII, par. 4, of the 1947 Constitution.
FIFTH: Plaintiffs contend that the act in question violates the due process and equal protection clauses of both the Fourteenth Amendment to the Federal Constitution and Art. I, pars 1 and 5 of the New Jersey Constitution of 1947.
Under this point, plaintiffs contend that the provisions of section 11 of the act, relating to the relocation of public utilities at the cost of the municipality, violates the due process and equal protection clauses of the Federal and State Constitutions because it affords special treatment to public utilities, not granted other property owners; compensation payable to a public utility is ascertained upon a basis radically different than that afforded other affected properties; and the statute unlawfully discriminates between properties of public utilities and properties of other owners.
True, section 11 of the act does make special provision for relocation of public utilities, that is not provided for with respect to properties of other owners. However, public utilities have long been regulated and controlled by law, both as to their acts in general and as to the rates they may charge. Public utilities serve large numbers of the public and their operation is charged with the vital public interest not applicable to other privately owned properties in general, and this fact affords a sufficient justification for a separate classification and different treatment than that provided by the act for other privately owned property.
The body of legislation in this State contains numerous examples of legislative policy exempting certain businesses in special classifications from the provisions of legislation applicable generally to others. For example, the State Highway Act, R.S. 27:7-13, contains special provisions relating to utilities. And see the Parking Authority Law, L. 1954, c. 138; L. 1949, c. 300; N.J.S.A. 55:14A-39; Urban Redevelopment Act, N.J.S.A. 55:14E-18, which *573 was sustained as constitutional in Redfern v. Board of Com'rs of Jersey City, 137 N.J.L. 356 (E. & A. 1948).
Such provisions granting special treatment for certain classes of property are unobjectionable unless it be shown that they have no reasonable basis connected with the general purpose of the statutes. Equitable Beneficial Assoc. v. Withers, 122 N.J. Eq. 134 (Ch. 1937); General Public Loan Corp. v. Director of Division of Taxation, 13 N.J. 393 (1953).
Surely, public utilities such as electric lines, water lines, gas lines, rail lines used by common carriers, all serve a general public purpose; the discontinuance or disruption of such service by clearance of a "blighted area" would cause a great public inconvenience; and consequently there is sound reason for classifying the properties of public utilities differently from that of other private owners of property and of providing means for the uninterrupted continuance of public service furnished by the utilities even where the utilities are located in a "blighted area" that is to be cleared and redeveloped in furtherance of the general objects of the act.
Equal protection of the laws merely requires that all persons similarly situated be dealt with alike. It prohibits arbitrary discrimination between persons similarly circumstanced. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952); where reasonable justification exists for separate classifications, legislation that treats all persons within a class reasonably selected for regulation in a like or similar manner satisfies the requirements of the State and Federal Constitution. Raymond v. Township Council of Teaneck, 118 N.J.L. 109 (E. & A. 1937); Guill v. Mayor and Council of City of Hoboken, 21 N.J. 574 (1956).
On this point, I conclude that plaintiffs' constitutional rights have not been violated by reason of the special treatment accorded by the act to public utilities.
Further, plaintiffs contend that the determination of "blight" in the case at bar is fatally defective in that *574 there are included in the so-called "blighted area" properties, including properties of the plaintiffs, that in fact are not blighted.
This subject is dealt with in the earlier part of this opinion.
In the first place, the act deals not with individual properties, but with areas. The fact that isolated structures or a few structures are to be found within the area determined to be "blighted," does not invalidate the determination that the area is "blighted." There is sound authority for the proposition that the existence of isolated or a few sound structures throughout a given area does not prevent a valid determination that the whole area is "blighted." Berman v. Parker, supra; Gohld Realty Co. v. City of Hartford, 141 Conn. 135, 141, 144, 104 A.2d 365, 368-370 (Sup. Ct. Err. 1954); Oliver v. City of Clairton, 374 Pa. 333, 98 A.2d 47 (Sup. Ct. 1953); Kaskel v. Impellitteri, 306 N.Y. 609, 115 N.E.2d 832 (Ct. App. 1953), certiorari denied 347 U.S. 934, 74 S.Ct. 629, 98 L.Ed. 1085 (1954).
Even conceding that there are some sound individual buildings within the "blighted area" in question, still I find there to be abundant and substantial evidence to support the conclusion that the whole area, including properties of the plaintiffs, is "blighted" within the definitions contained in section I of the act. Accordingly I am constrained to reject plaintiffs' contention that the determination of "blight" is fatally defective because there are some sound buildings located within the "blighted area."

REGARDING PROCEEDINGS BEFORE THE MUNICIPAL GOVERNING BODY.
Public hearing, on notice, was held before the planning board on December 1 and December 2, 1954. Subsequently the finding and determination of the planning board was approved by the governing body, the City Commission of New Brunswick, at a meeting before the city commission, of which meeting no special notice had been given nor was any special hearing afforded before the city commission.
*575 Plaintiffs make some contention that there should have been a hearing. However, there is nothing in the act requiring a public hearing or notice of hearing before the governing body following the hearings conducted by the planning board. In the absence of a statutory requirement therefor, there was no necessity for a public hearing on notice before the governing body of the city at the meeting at which it approved the finding and determination of the planning board. Sun Oil Co. v. City of Clifton, 16 N.J. Super. 265 (App. Div. 1951).
FINALLY, plaintiffs attack the conduct of the hearing before the planning board, which hearing began at 8 P.M. on December 1, 1954 and continued until about 12:25 A.M. on December 2, 1954. They cite section 4 of the act requiring a public hearing before the planning board (N.J.S.A. 40:55-21.4); Pennsylvania R. Co. v. New Jersey State Aviation Comm., 2 N.J. 64 (1949); and contend that the hearing was conducted in a confused, arbitrary, unfair and unreasonable manner, replete with error and mistake, and failed to meet the necessary standards for the conduct of such a public hearing.
The manner in which the public hearing before the planning board was conducted and what transpired at the hearing will be disclosed by an examination of the transcript of the proceedings (Exhibit D-25); by the typewritten statements of Mr. Samuel D. Hoffman and Mr. Robert E. Ross, both of which were read at the hearing and both marked Exhibit D-25; and by the published account of the hearing appearing in the Daily Home News of December 2, 1954 (Exhibit P-10), which typewritten statements and newspaper accounts were admitted in evidence and marked as exhibits by consent of counsel for the parties to this suit. These documents will disclose that the hearing lasted for approximately 4 1/2 hours, starting at 8 P.M.; that everyone in interest who attended the meeting was afforded an opportunity to be heard; and that the meeting finally concluded about 12:25 A.M. on December 2, 1954 with the announcement on behalf of the planning board that the matter would be taken under advisement *576 and that the board would inspect the area in question. The record contains no indication that the meeting was adjourned to any future date, nor indication that the hearing had not been concluded when the meeting ended. Mr. Jacques S. Lederman, representing some 22 different property owners, at the said meeting filed written objections with the planning board on behalf of his clients (Exhibit D-18); Mr. Lederman was in attendance at the hearing on December 2, 1954, and the transcript (D-25) will reveal that his vocal opposition at the hearing consumed a very substantial portion of the 4 1/2 hours devoted to the hearing. And even after conclusion of the hearing, upon receipt of a written communication from Mr. Lederman the board offered to consider any additional data that Mr. Lederman might care to submit up to December 13, 1954 (Exhibit P-6).
From the foregoing, I conclude that all interested persons who desired to express their opposition at the hearing were afforded an adequate opportunity to be heard, and that the statutory requirement for a public hearing was fully complied with.
Pennsylvania R. Co. v. New Jersey State Aviation Comm., supra, cited by the plaintiffs, is not pertinent to the case at bar. That case dealt with a hearing before the State Aviation Commission which was empowered to license airports under the provisions of R.S. 6:1-20 et seq. There the commission was authorized to and did take definitive action, namely the issuance of a license. The provisions of the act relating to the State Aviation Commission are entirely different than the so-called "blighted area" statute. There the court held that the Commission, in conducting the hearing, was acting in a quasi-judicial capacity and must adhere to standards applicable to such a proceeding. On the other hand, the planning board, under the statute relating to "blighted areas" (N.J.S.A. 40:55-21.1), is required to conduct a preliminary investigation, to hold a public hearing, to make certain factual determinations, and submit its determination to the governing body of the municipality in the form of a report, whereupon final action is taken not *577 by the planning board but by the governing body. The planning board, in its investigation and conduct of the hearing, was acting not in a quasi-judicial capacity but as a legislative fact-finding agency preliminary to and in aid of further action at a later date by the governing body. The planning board performed no quasi-judicial function. It had no authority to and did not presume to determine whether plaintiffs' several properties should be taken for public use. It merely determined, after investigation and hearing, that certain conditions existed in the area in question, and that the conditions enumerated in section 1 of the statute having been found to exist, the area was in fact a "blighted area." Whether or not the properties located in that area shall ever be "taken" for public use is a question that will hereafter be determined by the governing body of the municipality (N.J.S.A. 40:55-21.10). The standards of conduct of such hearings before legislative or administrative agencies is illustrated by the following cases: State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504, 523 (E. & A. 1935); Ryan v. Housing Authority of City of Newark, 125 N.J.L. 336 (Sup. Ct. 1940); Norwegian Nitrogen Products Co. v. United States of America, 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796 (1933); State, on Inf. of Dalton v. Land Clearance for Redevelopment Authority of Kansas City, 364 Mo. 974, 270 S.W.2d 44 (Sup. Ct. 1954).
In the Ryan case, supra, Mr. Justice Heher held that the necessity and expediency of the expropriation of private property for public use are purely legislative concerns and that a hearing thereon is not essential to due process within the intendment of the Federal and State Constitutions, and that, where the intended use is public, the necessity for and expediency of the "taking" may be determined by such agency and in such mode as the State may designate.
In the State Board of Milk Control case, supra, Justice Heher held that the regulation of the Milk Board there in question was a purely legislative question, and that even when exercised by a subordinate body to which the power had been delegated, a notice of the hearing essential in *578 judicial proceedings is not indispensable to a valid exercise of the power, and that a judicial review of the administrative proceedings on notice, satisfies the requirement of due process.
In conclusion: I find that the hearing before the planning board was held and conducted in conformity with the statutory requirements; that there was substantial evidence adduced in support of the board's finding that the area in question is a "blighted area" within the definition of the statute; that none of the plaintiffs' constitutional rights have been violated; and that judgment of dismissal of this suit should follow.