**CITY OF HOUSTON, Appellant,**

**v.**

**Ross BIGGERS et al., Appellees.**

**No. 14298.**

Court of Civil Appeals of Texas.

Houston.

June 11, 1964.

Rehearing Denied July 9, 1964.

R. H. Burks, City Atty., Joseph G. Rollins, Clifton E. Speir, Senior Asst. City Attys., Houston, for appellant.

Bracewell, Reynolds & Patterson, William H. White, Houston, for appellees.

BELL, Chief Justice.

This is an appeal from a judgment in a condemnation case awarding appellant title to 128,520 square feet of land in the City of Houston and giving appellees recovery against appellant for $1,157,615.00 which was the value of the land as determined by a jury.

Appellant complains that the trial court erred in not granting its motion to dismiss the case which motion was made after verdict but prior to the rendition of judgment.

The position of appellees is that because of the acts on the part of appellant hereinafter noticed there had been "a taking" of the property before the motion to dismiss was made and the point of no return had therefore been reached by appellant.

On April 3, 1962, the Judge of the court, in response to a petition filed by appellant, appointed commissioners to determine the value of appellees' property. The property was to be acquired by appellant as a part of the "Civic Center." After hearing, the commissioners, on June 22, 1962, made their award and it was filed with the judge July 6, 1962. On the same day appellees filed their objections to the award. Trial of the case in court commenced March 25, 1963. The jury returned its verdict March 29, 1963. On April 3, 1963, the City Council passed a motion authorizing the City Attorney to dismiss the case and directing him to prepare an ordinance eliminating appellees' property from the "Civic Center." On April 4 the motion to dismiss the case was filed. It recited the action of the Council in determining not to purchase the property at the value assessed and to exclude the property from the Civic Center and authorizing dismissal of the case.

On April 19 appellees filed an answer to the motion to dismiss and made a motion for judgment on the verdict. The basis of the opposition was that because of the appellant's acts with regard to the property, which we will specifically notice when we review the evidence given on the motion, appellees would be prejudiced by dismissal.

On April 19 appellant filed an amended motion to dismiss which attached a copy of an ordinance passed April 17 purporting to exclude the property from the Civic Center.

A hearing was commenced on the motion to dismiss on April 19, at which evidence was introduced, but it was not completed and was recessed until April 26. However, the court rendered judgment on the verdict April 19. At that time, as evidenced by the judgment signed by the court, appellant excepted to the judgment, and it was also recited therein that the motion to dismiss had been filed.

On April 26 the hearing on the motion to dismiss was resumed and at that time appellant filed what it denominated "Motion to Set Aside Judgment and Enter Judgment of Dismissal." It added an ordinance of April 24 passed by the City Council which definitely excluded appellees' land from the Civic Center. After further evidence was introduced the motion to dismiss was overruled.

The evidence on the motion to dismiss reflected without dispute that appellant had never taken physical possession of the property or any part thereof and that no deposit of the amount of the award made by the commissioners had ever been made so as to give appellant the right to possession. It showed that September 23, 1958, the City Council passed an ordinance determining that "Public necessity and convenience required the designation and protection of the Civic Center." The Civic Center was then designated as covering a defined area including appellees' land. It further provided that within the area no new structures would be permitted to be built and no repairs to existing structures would be permitted where the cost of the repairs in one calendar year exceeded 25% of the value of the structure repaired. The Director of Public Works and Engineering was directed to refuse any permit to build new structures or to make repairs contrary to the ordinance.

Mr. Ross Biggers, one of the appellees, testified that since the passage of the ordinance appellees had made repairs to the existing structure by putting on a new roof. He had made no application for any permit for a new structure. There is no evidence that appellees contemplated any new structure or additions to the existing structure. Appellee operated a printing business on the property. The operations, including the use of the building and parking facili-

ties, utilized an estimated 5% of the property. Appellees at no time sought amendment of the ordinance to exclude their property. It appears that prior to 1961 the City assessed the property for taxes at a relatively small amount, and beginning in 1961 raised the valuation from $6,950.00 to $217,000.00. Mr. Biggers made it clear that all values for tax purposes, both before and including the increase, were those fixed by the City and not appellees. The owners did not render the property nor was there any appeal to the Board of Equalization. In 1961, when there was this great increase Mr. Biggers appeared before the City Council to protest the increase when he could not utilize the property further because of the ordinance and increase his revenue. He did not, he testified, appear to protest that the amount of the increase exceeded what was a fair value for tax purposes. At that time someone on the Council told him not to worry, the City was going to take the property.

The evidence showed that at times after the passage of the ordinance of September, 1958, appellees had had various people who were interested in negotiating for purchase of the property but ended negotiations when it was learned the property was under threat of condemnation. It should be stated that appellant had the ordinance creating the Civic Center filed in the Deed Records of Harris County. The ordinance in fact directed the City Secretary to file a certified copy with the County Clerk. One advertiser wanted to lease space from appellees for a sign at $500.00 per month but lost interest when he learned of the threat of condemnation. It does not appear just when this interest was shown but the letters introduced in evidence are dated in 1961 and 1962.

As above stated, the City Council, by motion, on April 3, 1963, directed dismissal of the suit and the preparation of an ordinance excluding this property. An ordinance, which is numbered 63–544, was passed April 17, 1963. In the ordinance it was found by the Council that the value as found by the jury exceeded the benefit that would result to the public from acquisition of the property. Section 2 of the ordinance recites that the Council finds and determines that the ordinance of September 23, 1958 (Ordinance No. 58–1033) should be amended so as to exclude this property. It directed the City Secretary to file a certified copy for record with the County Clerk. It was purportedly passed as an emergency measure. Appellees contend this ordinance did not take effect immediately because not shown to have been supported by the proper number of Councilmen. Also, they contend, it merely declares the land should be excluded but does not specifically enact that it is thereby excluded. On April 24 the Council passed Ordinance No. 63–560, which definitely excluded appellees' land.

In testifying as to value in the condemnation hearing before the jury, Mr. Ross. Biggers, one of the appellees, testified the property had a market value of $1,285,200.-00, or $10.00 per square foot. One of appellees' experts testified the same and another testified to $1,250,000.00. Mr. Jungman, one of appellees' experts, testified for several years there had been a rising market and gave as his opinion that the property in the area was increasing at about 16% per annum. Mr. Biggers testified he would rather have the property than get $10.00 per square foot for it.

Appellees' position is that because of the facts detailed the court was correct in overruling the motion to dismiss. The foundation for such is their contention as follows:

1. The passage of Ordinance No. 58–1033 and its continuance in force until the ordinance of April 24, 1963 effected a "taking" of the property.

2. They would be prejudiced because they had been unable to negotiate for the sale or additional use of the property that might entail additional structures.

3. They had been put to expense in connection with the proceedings.

4. Appellant could, after dismissing the suit, refile and possibly get a lower award. In this connection they seem to assert this is the real purpose in seeking to dismiss. In other words, they challenge the good faith of appellant.

We are of the view that the court was in error in not sustaining the appellant's motion to dismiss.

The rule is well settled in Texas that a condemnor may elect to dismiss a condemnation proceeding at any time prior to judgment if there has been no taking of possession of the property under and by virtue of acquiring the right to possession under an order in a condemnation proceeding or under an agreement with the condemnee pending the proceedings. Brazos River Conservation and Reclamation Dist. v. Allen, 141 Tex. 208, 171 S.W.2d 842; Thompson v. Janes, 151 Tex. 495, 251 S.W. 2d 953; Lower Nueces River Water Supply Dist. v. Cartwright, 160 Tex. 239, 328 S.W. 2d 752; Leonard v. Small, 28 S.W.2d 826 (Tex.C.C.A.), writ ref.; Brazos River Conservation and Reclamation Dist. v. Harmon, 178 S.W.2d 281 (Tex.C.C.A.), ref., w. m.; Board of Regents of State Teachers College v. Kelley, 208 S.W.2d 565 (Tex.C.C.A.), no writ hist.; Rook v. McCulloch County, 326 S.W.2d 603 (Tex.C.C.A.), no writ hist.; Nehoc Land Co. v. City of Houston, 342 S.W.2d 42 (Tex.C.C.A.), ref., n. r. e.; Houston Pipe Line Company v. Brown, 361 S.W.2d 884 (Tex.C.C.A.), ref., n. r. e. See also Nichols, The Law of Eminent Domain, 3rd Ed., Sec. 26.42, p. 192.

In many of the cited cases the expression is used that there may be dismissal where the landowner "will not be prejudiced." It was then held there was no legal prejudice in any of them except those where prior to attempted dismissal there was actual physical possession under and by virtue of condemnation proceedings, or, possession by agreement pending condemnation and at the time of attempted dismissal possession had not been returned or offered to be returned.

In this case it is undisputed that appellant at no time had possession of the land or any part thereof.

The passage of the ordinance including the land in what was contemplated as a Civic Center did not, as appellees contend, constitute a taking. The act was purely legislative and could be changed at any time. Even though it might have, as a practical matter, interfered with the marketability of the property, it would cause but an incidental damage which is not compensable. The fact that at some future time land might be taken under eminent domain, even where the threatened taking is imminent, is but one of the conditions on which an owner holds property.

In the case of State v. Vaughan, 319 S.W.2d 349 (Tex.C.C.A.), no writ history, the State of Texas sued to condemn residence property that was used by the owners to lease to tenants. The property was within the area that had been designated under authority of statute, by the State Building Commission, as the area where property would be acquired for the construction of State buildings. The Executive Director wrote the owners a letter notifying them of the intent to condemn the property. Tenants, knowing of this, began to move. In the case the owners sought to recover as an element of damage the loss of rental caused by the threat of condemnation. The court denied recovery, holding the action occasioning the vacation by tenants did not constitute a "taking" because there was no physical invasion by the condemnor.

The above stated rule is also supported by the following cases from other jurisdictions: Hamer v. State Highway Commission of Missouri, 304 S.W.2d 869 (Mo. Sup., Div. 2); Sorbino v. City of New Brunswick, 43 N.J.Super. 554, 129 A.2d 473; United States v. Sponenbarger, 308 U.S. 256, 60 S.Ct. 225, 84 L.Ed. 230; Chicago Housing Authority v. Lamar, 21 Ill.2d 362, 172 N.E.2d 790; Mosher v. City of Phoenix, 39 Ariz. 470, 7 P.2d 622; Dan-

forth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240; Eckhoff v. Forest Preserve Dist., 377 Ill. 208, 36 N.E.2d 245; 64 A.L.R. 546.

■ Appellees urge they were prejudiced because the threat of condemnation by virtue of the ordinance prevented negotiations for sale and prevented their effective use of the property except for about 5% of the area. This would be but an incidental damage that is not compensable. In this connection, however, it is noticed that the evidence shows such repairs as appellees wished to make on their property they were permitted to make. They apparently did not wish to make any additional improvements because they made no application for a permit to build. Mr. Biggers did testify they took the Council at its word that no permit for building would be issued. We have no doubt that had appellees desired to build but did not do so because they felt they could not get a permit, Mr. Biggers would have so testified. If appellees had desired to do so they had their remedy, in spite of the ordinance, by mandamus. Kirschke v. City of Houston, 330 S.W.2d 629 (Tex.C.C.A.), ref., n. r. e. It would be purely speculative to say that appellees were deprived of any sale by interference with the right to negotiate. There is nothing to suggest an agreement would have probably been reached between appellees and a prospective purchaser. In the absence of such we are unable to see how any damage could be shown with any certainty. Too, it is noted the evidence shows there was a rising market in the area where appellees' property is located. They still have their property and Mr. Ross Biggers testified he had rather have the property than the $1,285,200.00 that he testified it was worth. The award was less than this.

■ Appellees complain of the expense they were put to. Attorneys fees, cost of experts and other expenses in preparation for trial are merely incidental expenses and not recoverable. City of Sherman v. Williams, 296 S.W. 663 (Tex.C. C.A.), no writ history. The incurring of them is not such prejudice as to require the condemnor to take property it decides it can do without. In every civil suit a plaintiff under Rule 164, Texas Rules of Civil Procedure can take a non-suit prior to a court's decision or the time the jury begins deliberations. Yet it is no condition to the exercise of the right that the plaintiff must pay attorneys' fees and expenses of the defendant. The same is true with regard to dismissal by the condemnor in a condemnation case.

■ The raising of the valuation for tax purposes does not result in any legal prejudice. It is observed that nowhere do appellees complain that the valuation is in any way discriminatory or in excess of market value or the percentage of market value at which the City assesses property for tax purposes.

■ Finally, appellees seem to challenge the good faith of the City in contending the City can refile the suit and they suggest the purpose of the City in dismissing was to avoid the high award of the jury and then to refile suit. There is no evidence to support such a suggestion. As related above, the City Council immediately after the verdict directed dismissal of the suit and preparation of an ordinance eliminating the area from the Civic Center. Then they, on April 17 passed an ordinance declaring it should be eliminated. We need not discuss whether it was in form sufficient to actually accomplish abandonment because it certainly evidences the Council's intention to abandon. Then when its sufficiency for that purpose was challenged, on April 24 an ordinance certainly sufficient was passed. It is true that the court excluded this ordinance, and we think erroneously, on the ground it was passed after the hearing on the motion to dismiss had commenced. However, it was passed prior to the completion of the hearing. It is true also that it was passed after judgment had been rendered on the verdict. However, the motion to dismiss was pending when the

judgment was rendered and was being actively prosecuted by appellant. Too, the judgment was rendered before completion of the hearing on the motion to dismiss over appellant's objection as evidenced by its exception contained in the judgment and at a time when the court recessed the hearing on the motion to dismiss. We think this evidences rendition of the judgment without prejudice to appellant's motion to dismiss.

The judgment of the trial court is reversed with directions to the trial court to enter an order dismissing the case.