LEONARD v. SMALL, County Judge, et al.

No. 12277.

Court of Civil Appeals of Texas. Fort Worth.
March 1, 1930.

Rehearing Denied April 5, 1930.

S. F. Houtchens, Clark & Clark, J. Harold Craik and P. Walter Brown, all of Fort Worth, for appellant.

R. E. Rouer, J. M. Floyd, and R. B. Young, Jr., all, of Fort Worth, for appellees.

DUNKLIN, J.

The city of Fort Worth filed with the judge of the county court a petition against J. M. Leonard for the condemnation of lot 3 and the east 40 feet of lot 4 in the city of Fort Worth, to be used as a public park of the city. Upon the filing of that application, the county judge appointed three commissioners to assess the damages resulting to Leonard, the owner, from the taking of said property for that purpose. After being duly sworn and after due notice to all the parties, the commissioners heard the evidence and returned into court their report showing an assessment of damages in the sum of $31,500. Exceptions and objections were duly taken to such finding by J. M. Leonard and filed with the county judge within ten days after the report of the commissioners.

The issues were then tried and determined by the county court before a jury. Only one issue was submitted to the jury, which, together with the answer thereto, was as follows: "What do you find from the evidence is the reasonable cash market value at the time of the property in controversy? Answer: $81,000.00."

That verdict was rendered June 13, 1929. On June 15, 1929, the plaintiff city of Fort Worth filed its motion to set aside the verdict on numerous grounds alleged in the motion. On June 25, 1929, the city filed another motion for the court to discontinue and dismiss the case from its docket and to permit plaintiff to abandon further proceedings in the cause. Several grounds were urged in that motion, one of which was that the damages allowed by the jury were excessive and far above the amount the city council contemplated paying when it decided to institute the condemnation proceedings, and that the city was without funds available for use in acquiring the property and paying the damages so assessed by the jury. On June 28, 1929, the defendant Leonard filed a motion to have judgment entered in accordance with the verdict of the jury. On the same day the court sustained the motion of the plaintiff to dismiss the suit and discontinue the condemnation proceedings theretofore instituted by it.

From that judgment of dismissal, Leonard duly prosecuted his appeal to this court, and the record of the proceedings was duly filed in this court on July 11, 1929. After his appeal had been thus perfected and filed in this court, Leonard filed his application for writ of mandamus to be issued from this court compelling and requiring the judge of the county court to determine the merits of plaintiff's motion to set aside the verdict, and, in the event the same should be overruled, to enter a judgment for condemnation of the property in controversy in plaintiff's favor and in favor of defendant Leonard for the sum of $81,000 as damages for the taking of it, in accordance with the verdict of the jury.

The appeal referred to above is now pending and undetermined, and whether or not the defendant Leonard is entitled to the relief prayed for in his application for mandamus is the principal issue involved in the appeal. Therefore, to grant the writ of mandamus would have the effect of disposing of the entire controversy presented by the appeal before the case on appeal is reached in its regular order.

■■ It is a familiar rule that, pending an appeal, this court has jurisdiction to grant ancillary writs, such as injunctions, to preserve the status of the property or matter in controversy until the appeal is decided, but it is quite clear that the material and controlling issue involved in this appeal cannot be summarily determined by a proceeding such as is now before this court. Accordingly, the application for the writ of mandamus now presented to this court is denied and refused, without prejudice, however, to the rights of the applicant to have the same questions determined when the appeal which he has prosecuted is heard.

On the Merits.

BUCK, J.

The city of Fort Worth, for the benefit of the city park board, filed condemnation proceedings before Judge P. J. Small, judge of the county court at law No. 2, Tarrant county. Subsequent to the filing of the petition, said judge appointed three disinterested freeholders as special commissioners to hear evidence and otherwise determine the market value of lot No. 3 and the east 40 feet of lot No. 4, in block No. 3, city of Fort Worth, belonging to J. M. Leonard, for the purpose of using said property as a public park. The hearing was duly and legally held, and, after due consideration and investigation, the special commissioners returned their findings into court, showing the market value of the whole tract of land sought to be condemned to be $31,500. J. M. Leonard then filed his exceptions to the findings of the special commissioners, and the case came on for trial before a jury in said court on June 10, 1929, and, in response to a special issue submitted to the jury, it was found that the market value of said tract of land was $81,000.

In the trial court the city of Fort Worth first filed its motion for new trial, in which it was claimed that the verdict of the jury

was excessive, and other grounds for a new trial were contained in said motion. Before the court had acted on said motion, the city filed its motion to abandon the condemnation proceedings, and the court granted said motion, and J. M. Leonard, the owner of the property, has appealed.

### Opinion.

Lewis on Eminent Domain says, in section 955: "The weight of authority undoubtedly is that, in the absence of statutory provisions on the question, the effect of proceedings for condemnation is simply to fix the price at which the party condemning can take the property sought, and that even after confirmation or judgment the purpose of taking the property may be abandoned without incurring any liability to pay the damages awarded. Beasley, Chief Justice of the Court of Errors and Appeals of New Jersey [O'Neill v. Freeholders of Hudson County, 41 N. J. Law, 161, 172, 173] referring to the principle of a previous decision (matter of Water Commissioners of Jersey City, 31 N. J. Law, 72, 86 Am. Dec. 199), says: 'That principle in substance was this: that whenever land is sought to be taken for. a public purpose, the public authorities, in the absence of any statutory provision to the contrary, have a reasonable time given them, after the ascertainment of the expense of the scheme, to decide whther to accept or refuse the land at the price fixed. On every account, that rule commends itself to my judgment. With respect to the land owner, the procedure is fair and just: it calls for a reasonable valuation of his land, and if the public reject it at such estimation, he suffers, in general, no detriment; and if, in any exceptional case, any injury is done to him, he is entitled to reparation. On the other side, the rule in question is a necessity in view of the rational conduct of public affairs; the question whether a projected improvement is wise or unwise, expedient or inexpedient, cannot be answered by any one who is ignorant of the expense that it involves, and therefore to require public agents, in handling these matters, to disregard this plain dictate of common sense, would be altogether absurd. A man of prudence relinquishes a project when he finds the cost is likely to exceed, in a large measure, its benefit; it would seem intolerably unreasonable to require the agent of the public to pursue the opposite course. In construing any statute authorizing one of these undertakings, every reasonable intendment should be against reading it in a sense that would put the public in this false position. The legal effect of such acts should be held to be that they compel the land owner to offer the public the required land at the ascertained price, and that when such price has been finally ascertained, the public has a reasonable time within which to make an election either to accept or reject the offer.' Similar reasoning will be found in the other cases cited. But while the condemnor may abandon the purpose of taking the property it cannot avoid the effect of the award or judgment if it desires to acquire the same. It has been held that the right to abandon is not affected by the fact that the petitioner has taken possession, pending proceedings, under a statute which provided that it might do so upon depositing a sum to be ascertained by the judge of the court in which the proceedings are pending."

The rule announced in section 417, Nichols on Eminent Domain, is as follows: "In the states in which condemnation is effected by judicial proceedings it is almost universally held that the mere fact that compensation has been assessed does not prevent a discontinuance of the proceedings. In fact, one of the strongest arguments in favor of this method of exercising the power of eminent domain is that public policy requires the cost of a public improvement to be ascertained before it can be finally determined that it is advisable to undertake the work, and that this cannot be done until the compensation for the land taken has been finally assessed by the jury or other tribunal required by the Constitution or statutes. The award in such states is merely an offer which the public agency contemplating the work may accept or decline as it sees fit."

In Elliott on Roads and Streets, § 307, it is said: "The right to discontinue proceedings, unless the statute otherwise provides, exists as long as the amount of compensation remains undetermined, except in cases where possession has been taken or the party seeking to condemn property has so far affirmed the proceedings as to give the owner a right to treat the taking as final. It is evident that a county, township, or municipal corporation ought not to be held bound to take and pay for property required for a road or street until it knows certainly and definitely what it will be compelled to pay for the property. Doubtless it should, in justice, be required to pay costs and expenses where it discontinues, and probably damages where its acts have caused injury, but it cannot, in reason or justice, be compelled to take the property until it is informed what compensation will be exacted, and opportunity is afforded to determine whether the public welfare will justify the expenditure or the treasury will fairly bear the burden."

In Dillon on Municipal Corporations, § 1044, vol. 3, p. 1151, it is said: "Under the language by which the power to open streets and to take private property for that purpose is usually conferred upon municipal corporations, they may at any time before taking possession of the property under completed proceedings, or before the final confirmation, recede from or discontinue the proceedings

they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested rights in others have attached. Until the assessments of damages have been made, the amount cannot be known; and on the whole, it is reasonable that after having ascertained the expense of the project, the corporation should have a discretion to go on with it or not, as it sees fit."

In McQuillin on Municipal Corporations, § 1504, p. 3146, the rule is stated as follows: "In order to determine whether a municipality may discontinue or abandon condemnation proceedings, resort should first be had to the statutes and charter to ascertain if there are any provisions in regard thereto, since if there is such a provision it governs both as the time when, and the conditions under which, the proceedings may be discontinued. If there is no statutory or charter provision, the general rule is that a municipality may dismiss condemnation proceedings, at any time before title passes, and that if the title does not pass prior to confirmation or judgment, the proceedings may be dismissed even after the return of an award or verdict."

The United States, in the case of Owen v. United States (C. C. A.) 8 F.(2d) 992, sought to condemn a tract of land situated in the county of El Paso, Tex. The owner of the land filed objections to the award of the commissioners, and while the case was pending before the District Court, the government filed a motion to dismiss its petition. The landowner resisted the motion to dismiss, and, after a hearing, the motion was granted. The Circuit Court of Appeals, speaking through Justice Bryan, says: "The government had the right to dismiss or abandon its petition at any time before there had been a taking of property and the right of compensation had become vested"—citing Kanakanui v. U. S. (C. C. A.) 244 F. 923, 924.

The case last cited is one where judgment had been rendered, and the court in that case held that there was no taking of the property, since the government had not occupied it, and it had a right to abandon proceedings even after judgment. The judge said: "The only limitation upon the power of the United States to exercise the right of eminent domain is that just compensation shall be made for property taken. Just compensation means the full equivalent for the property taken. * * * By the terms of the judgment of condemnation as it is here pleaded, and by the rules sustained by the weight of authority, there was no taking of the property which was sought to be condemned. Lewis on Eminent Domain (3d Ed.) § 655. The United States had the right to and did abandon the proceeding."

In the case of Mason City & Ft. D. R. Co. v. Boynton, 158 F. 599, 600, the Circuit Court of Appeals, speaking through Justice Van Devanter, says: "The statute and the decisions interpreting it make it plain that the object of the proceeding is to ascertain the damages to be paid to the owner, if the railroad company elects to take the property; that the company is free to pay the damages, and take the property or to abandon its original purpose in that regard, even where it has taken possession pending an appeal from the commissioners' assessment; that the ownership is not transferred until the damages are finally ascertained and actually paid."

In Denver & N. O. Ry. Co. v. Lamborn, 8 Colo. 380, 8 P. 582, the Supreme Court of Colorado says:

"At what stage of condemnation proceedings, under our statute, does petitioner forfeit or lose the right of abandoning the same upon payment of all costs and damages actually accrued. It is, in our judgment, a correct answer that such privilege is lost whenever the land-owner acquires a vested right to the compensation awarded; but there is some diversity of opinion among the decisions as to when this vested right accrues. * * *

"But, according to the conclusion reached in the better reasoned decisions, the rights of petitioner and respondent are reciprocal. Respondent acquires no vested right to the compensation awarded until petitioner has secured a vested right to the property condemned, and vice versa. Accordingly, it has been held, under statutes similar to ours in this respect, that the privilege of abandonment may be exercised at any time prior to the payment or deposit in the manner provided by law of the sum awarded. * * *

"It has been held that municipal corporations may discontinue and abandon condemnation proceedings, although possession has been taken and retained pending the same; and this, too, in cases where there does not appear to have existed any express statutory authority for such taking. 2 Dill. Mun. Corp. (3d Ed.) § 609, and cases cited.

"In view of the foregoing conclusions, we are disposed to hold that under the law petitioner retains the right to abandon, even though he procures a statutory order for possession, and takes the same pending proceedings. It is quite as important for him to have this privilege as if the possession had not been obtained, and respondent is fully protected."

In Louisville, N. O. & T. Ry. Co. v. Ryan, 64 Miss. 399, 8 So. 173, 174, the Supreme Court of Mississippi says: "We have found but one decision in which the position taken by appellee, that the award of damages fixed the right of the landowner to the sum awarded, and gave power to the court to enter a personal decree in the absence of a provision in that respect by the statute, is sustained.

In Drath v. Railroad Co., 15 Neb. 367, 18 N. W. 717, this view is maintained, but this case is, we think, in conflict with the decided weight of authority. Unless by the statute the right of the landowner is to be considered as fixed by some step in the proceedings, it seems that the right of abandonment must exist, especially in states whose constitutions provide, as ours does, that the compensation must be 'first paid' before title can be acquired by the party'claiming the right of eminent domain."

In Stevens v. Borough of Danbury, 53 Conn. 9, 22 A. 1071, 1072, the Supreme Court of Errors of Connecticut says:

"The amount is fixed by the proceedings as the sum to be paid if the land is taken, and its payment is clearly a condition precedent of the right to take it. The mere incipient or theoretical taking is really only a proposed taking. * * * We conclude, therefore, that the borough, after the assessment, had still the right to abandon the idea of taking the land, and the whole project if it deemed best, and that the only security that the owner of the property had, was in the necessity of the borough making payment before the land was actually taken.

"There may be a hardship in compelling a land or mill-site owner to hold his property in entire uncertainty, after an assessment, whether it will be taken or not; but the inconvenience is of the same kind which attends all proceedings for the taking of land for public improvements, and which is incident to the ownership of property in a community, and especially in a city."

In the case of District of Columbia v. Hess, 35 App. D. C. 38, 28 L. R. A. (N. S.) 91, Justice Robb, says: "Accordingly it is a rule of almost universal application that, in the absence of any statutory provision showing a legislative intent to the contrary, condemnation proceedings may be discontinued by the condemning party at any time before the right of the property owner has become complete. Manion v. Louisville, St. L. & T. R. Co., 90 Ky. 491, 14 S. W. 532; Simpson v. Kansas City, 111 Mo. 237, 20 S. W. 38; O'Neill v. Hudson County, 41 N. J. Law, 161; Nichols, Em. Dom. §§ 337, 338."

Other authorities might be noted, such as Fairmont, etc., Ry. Co. v. Bethke, 37 S. D. 446, 159 N. W. 56; Park District of the City of Enderlin v. Zech, 56 N. D. 431, 218 N. W. 18; Pitsnogle v. Western Maryland Ry. Co., 123 Md. 667, 91 A. 831, Ann. Cas. 1916B, 1171;

Griffeth v. Drainage Dist. No. 41 in Pocahontas County, 182 Iowa, 1291, 166 N. W. 570; State ex rel. Struntz v. Spokane County, 85 Wash. 187, 147 P. 879; Manion v. Louisville, etc., Ry. Co., 90 Ky. 491, 14 S. W. 532.

We conclude that there was no error in the trial court's action in granting the motion of the city of Fort Worth to abandon and dismiss its petition to condemn the property, at least before a judgment had been rendered and before the right of the city of Fort Worth to condemn the property had been vested and the property taken.

All assignments of error are overruled, and the judgment is affirmed.

#### On Appellee's Motion for Rehearing.

Appellee stresses, in his motion for rehearing, two statutes, to wit, article 3266, subd. 6, as follows: "If either party be dissatisfied with the decision, such party may within ten days after the same has been filed with the county judge file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined *as in other civil causes in the county court.*" (Italics ours.)

Also article 2182: "At any time before the jury has retired, the plaintiff may take a non-suit, but he shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief. When the case is tried by the judge, such non-suit may be taken at any time before the decision is announced."

We are not prepared to hold that the expression in article 3266, that "the cause shall be tried and determined as in other civil causes," means more than that the general rules with reference to the trial of civil cases shall be followed, in view of the authorities cited on original hearing, and in view of the absence of authorities to the contrary, in so far as we have been able to find.

In New Haven Water Company v. Russell, 86 Conn. 361, 85 A. 636, 638, it is said: "But a 'condemnation proceeding' is not a civil action, nor a civil process within the meaning of the statutes relating to civil process. It is a special proceeding to determine in a single action the damages done by the taking" —citing Lewis on Eminent Domain, and other authorities.

The motion for rehearing is overruled and also the motion to certify.