LOWER NUECES RIVER WATER SUPPLY DISTRICT V.
HOLMAN CARTWRIGHT ET UX.

No. A-7153. Decided November 11, 1959.
(328 S.W. 2d Series 752)

240

*Schneider & Schneider* and *Charles C. Triplett,* all of George West, *Lewright, Dyer & Redford, Fischer, Wood, Burney & Nesbitt* and *Allen Wood,* all of Corpus Christi, for petitioner.

The Court of Civil Appeals erred in holding that condemnor would have to proceed with the condemnation proceedings filed with the county judge after the title question, injected into the proceedings by the condemnees had been decided in the district court rather than holding that condemnor could have all matter in dispute between the parties, including the condemnation and assessment of damages tried in the district court. And in holding that condemnor cannot dismiss the condemnation proceedings. Blair v. Archer County, 145 Texas 102, 195 S.W. 2d 348; McInnis v. Brown County Water Improvement Dist., 41 S.W. 2d 742, writ refused; McGee Heirs v. Slack, 258 S.W. 2d 797.

*William L. Hardwick,* of George West, *Morrill & Patton,* of Beeville, *Harry J. Schulze,* of Three Rivers, *Clemens, Knight, Weiss & Spencer* and *Theo F. Weiss,* all of San Antonio, for respondents.

' Cited in rebuttal Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953; Houston Northshore Railway Co. v. Tuyrrell, 128 Texas 248, 98 S.W. 2d 786; Smith v. Brown, 32 S.W. 2d 388.

. MR. JUSTICE NORVELL delivered the opinion of the Court.

The controlling question in this case is whether a condemning authority in an eminent domain proceeding may, prior to an award, properly dismiss proceedings pending before the special commissioners in condemnation and file suit in the District Court seeking both a determination of title disputes which had arisen in the proceedings before the commissioners, and the fixing of compensation for such property as was being taken by the condemning authority under the power of eminent domain.

The Court of Civil Appeals was of the opinion that title questions were involved in this litigation; that these should be determined by the District Court, and that thereafter the special commissioners should fix the damages occasioned by the taking of the lands or interests therein which had not been theretofore acquired by the District. 319 S.W. 2d 158.

While agreeing with the Court of Civil Appeals in its factual analysis of the case, we are of the opinion that the "point of no return" had not been reached in the proceedings before the special commissioners because no award had been made and hence this case is distinguishable from Brazos River Conservation District v. Allen, 141 Texas 208, 171 S.W. 2d 842, wherein it appeared that an award and deposit in accordance therewith had been made and possession of the premises thus secured by the condemning authority. We refer to the steps taken before the county judge and the special commissioners as the administrative proceedings because they are in no sense judicial. The nature and characteristics of such proceedings were recently considered and discussed by this Court in Pearson v. State, 159 Texas 66, 315 S.W. 2d 935.

It appears that possession of lands belonging to the Cartwright respondents was not obtained by the Water Supply District under an award, or by virtue of an agreement operating in much the same way as an award, which was made or executed in connection with the administrative proceedings. It follows then, in view of the title issue involved, the Water Supply District was entitled to bring suit in the District Court and have that court determine not only the questions of title but also the amount of compensation to be paid to the Cartwrights for lands and rights in land owned by them and taken by the condemning authority. Article 3269, Vernon's Ann. Texas Stats.

Accordingly that portion of the Court of Civil Appeals' judgment which reversed the District Court's dismissal of the Water Supply District action in the District Court (upon the sustaining of a plea in abatement) is affirmed. That part of the Court of Civil Appeals' judgment affirming the denial of an ancillary temporary injunction against respondents is reversed and said parties are here now restrained from taking further action in the administrative proceedings pending final disposition of the cause now pending in the District Court. This temporary injunction, being a pendente lite order, is subject to modification by the District Court provided such action be consistent with

this opinion which will govern the trial of this cause in the District Court.

A discussion of the case involves both the grounds upon which the Court of Civil Appeals based its decision and certain additional or supplementary arguments advanced by the respondents in this Court. These two theses are not consistent in all respects. For instance, the Court of Civil Appeals was of the opinion there was a title dispute extending beyond a certain 302.28-acre tract involved as is apparent from the following excerpt from that Court's opinion:

"Cartwrights claim that they removed the title issue from the condemnation suit because they filed a disclaimer, but the disclaimer is not as broad as the claim, and title issues still remain. There still exists, even with the disclaimer, a dispute over the rights of Water District as to the duration of the easement on lands between the line described in the disclaimer as 'now' below the seventy-five foot contour level, and the land as actually described by metes and bounds in Water District's easement. The disclaimer is silent about disclaiming as to Water District's right to flood intermittently an additional 2,147.82 acres of land between the seventy-five and eighty-five foot level. There are other disputes. In any event, a disclaimer does not entitle one to a dismissal, but entitles the claimant to a judgment upon the disclaimer."

Respondents, on the other hand, insist that there was no title dispute and that petitioner is precluded from raising a title issue.

1   The frame of a case in this Court is determined by the points contained in the application or applications for writs of error. A party who files no application may not obtain a reversal or modification of a judgment of a Court of Civil Appeals, although he may urge a different ground for an affirmance than that set forth in the opinion of the Court of Civil Appeals. Vanover v. Henwood, 136 Texas 348, 150 S.W. 2d 785.

The respondents filed no application for writ of error and submitted no prayer for modification or reversal of the judgment of the Court of Civil Appeals. They stand before this Court simply asking that such judgment be affirmed although they do, by way of argument, suggest grounds for affirmance different from those selected by the Court of Civil Appeals.

Any modification of the Court of Civil Appeals' judgment must be predicated upon points of error contained in the Water Supply District's application for writ of error; it being the only application filed in the case. The District does not complain of the Court of Civil Appeals' action reversing the order of dismissal entered by the District Court. Hence the order of the Court of Civil Appeals which, in effect, reinstates the case upon the District Court's docket, cannot be modified or reversed by us. And this circumstance should be kept in mind in connection with the following discussion. The effective points raised by petitioner relate to the action that is to be taken by the District Court upon the trial of the case, that is, shall the District Court proceed to determine compensation issues as well as title issues or shall it determine the title issues and then notify the commissioners of this action and allow them to proceed from this point?

The statement of the Court of Civil Appeals is entirely adequate for a determination of this issue, but in view of contentions raised by respondents we will restate the basis of the controversy in more or less chronological order.

The lands which are the subject matter of this litigation lie in the valley of the Nueces River in the general shape of a bowl and include reservoirs holding water impounded by the construction of dams across the river. There are three strips or areas of land involved. On lies below the contour line of 75 feet above sea level. The second lies between the 75-foot and the 85-foot contour line. The third lies between the 85-foot and the 94-foot contour line.

These strips came into being, so to speak, through an easement contract executed by respondents Holman Cartwright and his wife on December 23, 1927, plus the desire and plans of the petitioner, Lower Nueces River Water Supply District, to provide a greater water supply for the City of Corpus Christi and those residing along the lower reaches of the Nueces.

The Cartwright 1927 easement conveyed to the City of Corpus Christi the right to inundate and overflow certain lands for water storage purposes. It had reference to a reservoir formed by placing a dam across the Nueces which was a much smaller structure than the presently existing Wesley Seale Dam.

This easement gave the City the right to flood and permanently submerge a tract of 302.28 acres, together with the right

to flood and overflow, during times of high water and flood, an additional 2,147.82 acres of land. Both tracts were described by metes and bounds and the line of 75 feet above sea level was referred to as bounding the 302.28-acre tract, while the 2,147.82-acre tract was described as lying between the 75-foot line and the line of 85 feet above sea level. From this instrument we get the 75 and 85-foot contour lines.

The duration of the easements was for "a period of forty (40) years, from and after the date hereof (December 23, 1924), or during the time said easements, rights and privileges may be actively used by said City, its successors and assigns for said purposes; provided, however, that upon there being a cessation in the use thereof for a continuous period of three (3) years said easements, rights and privileges will cease to exist in the city and revert in full to grantors, their heirs, representatives and assigns."

With the erection of the Wesley Seale Dam, a much larger and more extensive structure than the then existing dam, the Lower Nueces River Water Supply District, successor in interest to the City of Corpus Christi, sought to procure an easement covering some 3,242.92 acres of land owned by Cartwright for water storage purposes. This acreage lay between the 75 and 94-foot contour lines and included the 2,147.82 acres covered by the 1927 easement. Being unable to reach an agreement as to compensation for the proposed taking, the District on November 1, 1957, commenced condemnation proceedings and requested the County Judge of Live Oak County to appoint special commissioners in partition.

During the proceedings before the commissioners a dispute arose as to the construction of the 1927 easement. It seems to have been Cartwright's contention that in all events the easement expired in 1967, forty years after date thereof. The District, on the other hand, contended that the easement was of a perpetual nature and would be terminated only by a complete nonuser. This was not the only legal difference that arose between the parties. There is seemingly some question as to whether or not the detailed metes and bounds description of the 302.28 and 2,147.82-acre tracts contained in the 1927 easement exactly correspond with the 75 and 85-foot contour lines which were referred to for descriptive purposes in the Water Supply District's application for the appointment of special commissioners. The record also discloses that respondents as condemnees in the eminent domain administrative proceedings

filed thirty-eight special exceptions to the petition seeking the appointment of commissioners and that after hearings had taken place for some days, the Water Supply District made application to the County Judge of Live Oak County to instruct the special commissioners as to numerous matters of law including the extent and duration of the 1927 easement. It is perhaps an understatement to say that the case was becoming complicated. In fact, considering the contentions of the parties, it would seem that as a practical matter a larger and more suitable arena was called for. It was at this juncture and before any award had been made that the Water Supply District sought to discontinue proceedings before the special commissioners and filed suit in the District Court to settle both the questions of title which had arisen and the amount of compensation to be paid to Cartwright for the taking of his property.

The petition filed in the District Court embraced all three strips or areas of land above mentioned. The 302.28-acre tract of land lying below the 75-foot contour line was specifically brought into the suit by the petition. The suit then involved 3,563.20 acres of land made up of 302.28 acres lying below the 75-foot contour; 2,147.82 acres lying between the 75 and 85-foot contour lines, and 1,113.10 acres lying between the 85 and 94-foot contour lines. In addition to a settlement of all title controversies between the parties and the fixing of the compensation to be paid to the Cortwrights, the Water Supply District also sought an ancillary pendente lite injunction to prevent further proceedings before the special commissioners.

Cartwright sought to abate the suit. In this he was successful. The order of the District Court was that:

"It is further ordered, adjudged and decreed by the Court that the defendants' plea to the jurisdiction and in abatement be, and they are hereby sustained, and *this cause* is hereby dismissed."

The cause was considered as a unit in the District Court and the Court of Civil Appeals. And as above pointed out we are not authorized under the frame of the case to apply a different treatment even though we might be of the opinion that there exists no genuine title dispute as certain portions of the land involved. For our present purposes the extent, scope or magniture of the title dispute is immaterial.

**2** It is reasonably clear that the holding of the Court of Civil

Appeals was not based upon the theory that the filing of an application for the appointment of special commissioners was an admission of title which "altereth not" and was forever binding upon the condemning authority. Rather, that Court took the position that, although there were title issues involved which must be determined by the District Court, the administrative proceedings having for their purpose the fixing of the amount of compensation to be paid had reached a stage where it would be prejudicial to the landowner to permit a dismissal. Upon this narrow point we disagree with the Court of Civil Appeals.

Ordinarily, the condemning authority may refuse to take the property sought to be condemned and decline to pay the award finally fixed by either special commissioners or a judicial tribunal. Texas Power & Light Co. v. Cole, 158 Texas 495, 313 S.W. 2d 524. However, when the condemning authority *gains possession of land under and by virtue of condemnation proceedings* and cannot thereafter restore possession to the landowner and thus re-establish the status quo, such authority cannot dismiss the condemnation proceedings under which possession was obtained and seek to re-litigate the matter of damages. Such action would result in obvious prejudice to the landowner and if permitted would allow the condemning authority to try the damage issue again and again until it received a favorable or acceptable award. This is the prejudice to the landowner which the rule of Brazos River Conservation & Reclamation Distict v. Allen, 141 Texas 208, 171 S.W. 2d 842, is based. In that opinion it was said:

"It is apparent from the record that the purpose of the District, in filing its motion to dismiss the first suit and seeking to withdraw the deposit which it made therein and in instituting the second proceeding for condemnation of the same land as that involved in the first suit, together with a greater interest in that land and together with additional land, was to rid itself of the first suit, and of the obligations that might arise therefrom and to prosecute a new proceeding as if the first suit had never been filed. A condemnor has the right to correct its errors, to dismiss its proceeding for condemnation, to abandon the purpose of taking the land, but it may not exercise any of these rights to the prejudice of the land owner."

A similar holding was made by this Court in Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953 wherein the trustee for the railroad company gained possession of the lands under and

by virtue of stipulation of the parties entered into in connection with an adjournment of the hearing before special commissioners in condemnation.

This Court treated this agreement as creating a situation similar to that existing in the Allen case where possession was obtained by award and subsequent deposit, and the rule of that case was held applicable. This is made clear from the following quotation from this Court's opinion in the Janes case:

"In this case, however, petitioner acquired possession of the four acres at the outset of the suit under an agreement with respondents and has not offered to return possession to them of that portion sought to be dismissed. The Court of Civil Appeals recognized that the right of dismissal should not be exercised to the prejudice of the condemnee, a principel expressed in Brazos River Conservation & Reclamation District v. Allen, 141 Texas 208, 171 S.W. 2d 842, and held that, as a condition precedent to petitioner's right of dismissal, he must restore the status quo by surrending to respondents possession of the land sought to be dismissed."

3   The "prejudice" referred to in the cited cases is not the advantage or disadvantage, however one may view it, of having damages determined by special commissioners as compared with a district court jury. Presumably, the dismissal of the administrative proceedings would be at petitioners costs and the only practical difference between the plan provided for in the Court of Civil Appeals' judgment and the one adopted by us would be in the designation of the authority to settle the damage issues. It is our conclusion that all issues, including those relating to compensation, may properly be determined in the District Court in accordance with the provisions of Article 3269, and that respondents' rights will in no wise be prejudiced by this action.

Respondents, however, earnestly contend that petitioner is precluded from raising a title issue because it is now in actual physical possession of the property. This argument, if accepted, would call for an affirmance of the trial court's judgment or the severance of the cause into two parts, one relating to the 302.28 acres lying below the 75-foot contour line and the other relating to the remainder of the lands in litigation. Such relief, however, cannot be granted by this Court for the reasons heretofore mentioned. Consequently, respondents' contention is pertinent only insofar as it suggests an alternative basis for refusing to

disturb the judgment of the Court of Civil Appeals. When so considered, the thesis is untenable.

It appears that petitioner has closed the gates on the Wesley Seale Dam and that this action will and perhaps has resulted in the flooding of a substantial portion of the property involved in this litigation. Considering the complications incident to any major flood control or water impounding project, it is perhaps not uncommon that someone's property may be effectually "taken" prior to the completion of condemnation proceedings or the making of an award therein. Respondents say that this is the situation existing in this case. They do not contend that the Water Supply District obtained possession of their lands through an award, agreement or any other procedure connected with the administrative condemnation proceedings. On the other hand, they say that petitioner is a naked and willful trespasser wholly without claim of right.

From this basis they argue that if one who took possession after award and deposit in the administrative proceedings cannot dismiss, then certainly a trespasser should be denied the right to dismiss the administrative proceedings. This argument is based upon a non sequitor. Suppose a plaintiff in condemnation filed an application for the appointment of commissioners one day and upon the following day seeks to dismiss it for the reason that the ownership of the land involved is actually vested in the condemning authority. Would we insist that the filing of the application was forever binding upon the condemning authority, and it would have to re-acquire the land by condemnation because it had made a mistake in filing its application? The answer seems obvious. The application stands as an admission of title only so long as it is not withdrawn, or some action is taken in reference thereto which renders a withdrawal prejudicial to the opposing party. It would logically follow that if the right of disimssal may be exercised without prejudice to the condemnee, then such right exists and when exercised, operates to remove all admissions as to title which are inferred from and incident to the filing of an application for the appointment of special commissioners under Article 3264, et seq., Vernon's Ann. Civ. Stats.

Or, suppose that upon motion to dismiss the application setting forth the ground that the condemning authority actually owned the land, the defendant would counter with a claim that he was the owner of the premises. This would not defeat the

motion to dismiss. We would then have a title dispute over which the district court has exclusive jurisdiction.

And in these hpyothetical instances, where does the matter of possession figure? The answer is that it has no bearing upon the situation one way or another unless that possession has been acquired under and by virtue of, or in connection with the administrative proceedings and a dismissal of such proceedings would result in the authority's ridding itself of an unfavorable award or agreement to the landowner's prejudice. Texas Power & Light Co. v. Cole, 158 Texas 495, 313 S.W. 2d 524; Thompson v. Janes, 151 Texas 495, 251 S.W. 2d 953; Brazos River Conservation & Reclamation Dist. v. Allen, 141 Texas 208, 171 S.W. 2d 842; Kansas City, Mexico & Orient Ry. of Texas v. Kirby, Texas Civ. App., 150 S.W. 228 wr. ref.

To denounce the trespass as a civil wrong or offense accomplishes nothing. One might as well say that as murder is a heinous crime, it should be tried by three commissioners appointed by a county judge rather than by a jury in the district court. As a matter of fact the district court, a judicial tribunal, is the proper place to try serious offenses and complicated lawsuits. It is to be preferred as a practical matter over the administrative process which is primarily designed for conciliation and settlement purposes, rather than litigation. In fact, it seems somewhat anamalous to contend that one is prejudiced for the sole and only reason that his remedy against wrong lies with the District Court which, under our Constitution, is the principal court of original jurisdiction. Article 5, Sec. 8, Texas Constitution.

For the reasons stated the judgment of the Court of Civil Appeals is modified as hereinabove indicated, and as so modified is affirmed.

It is accordingly so ordered.

Opinion delivered November 11, 1959.

MR. JUSTICE GRIFFIN dissenting.

I agree with the majority opinion insofar as it holds that there is a title dispute which involves the land below the 75-foot contour line. This land was never included in the condemnation proceedings. The pleadings of District in the condemnation cause filed with the County Judge made no mention of any rights

in and to the land below the 75-foot contour line. A proper description of the land sought to be condemned is essential for jurisdiction to condemn to attach. The land below the 75-foot contour line not being described in the statement filed with the County Judge, there was no jurisdiction in the condemnation commissioners nor in the County Court on appeal to make any orders with regard thereto. Miers v. Housing Authority of City of Dallas, 1954, 153 Texas 236, 266 S.W. 2d 842; 16 Texas Jur. 662, Sec. 323. Only the District Court has jurisdiction to try a title dispute.

I could agree with the holding of the majority as to the land between the 75 and 94-foot contour lines except for the fact that the District had taken actual possession of all of this land up to the 88-foot contour line at the time of trial. The Wesley Seale Dam had been completed and its gates closed. By this action the land belonging to the Cartwrights had been flooded up to the 88-foot contour line. District had thus put it beyond its power to return the land to the Cartwrights when it sought to dismiss its County Court condemnation.

As I understand the law, a condemning authority may dismiss, or abandon its condemnation proceedings at any time before the title has passed, *provided* it returns the land sought to be condemned to the condemnee. This puts all parties in the same position they occupied at the time the condemnation proceedings were begun. I believe this to be the general rule of law.

The case of Kansas City, M. & O. Ry. Co. of Texas v. Kirby, Texas Civ. App., 1912, 150 S.W. 228, wr. ref. discusses the right of condemnor to dismiss his action. In that case the Railway Co. instituted condemnation proceedings in county court. A hearing was had and an award made. Railway Co. paid in to the county clerk double the amount of the award and went into possession of the property sought to be condemned and constructed its roadway thereon. The condemnation proceeded in its regular course and the case twice reached the Court of Civil Appeals and each time was sent back to the county court for action. After the second reversal, Railway Co. filed its motion to dismiss the condemnation proceeding on the ground it had changed its line and no longer needed the land sought to be condemned. The County Court heard such motion to dismiss and granted same insofar as condemnors sought to condemn the property, but left in the County Court the landowner's action for damages on account of the *taking* and *appropriation* of his property. The County Court proceeded to judgment against the

Railway Co. and had execution issued to collect the judgment. The Railway Co. then filed the present suit seeking an injunction to prevent the collection of the judgment. Its grounds for asking for the injunction were that the judgment was void because the County Court lost its jurisdiction when his motion to dismiss was sustained; and other grounds not material to an inquiry. On a hearing in the District Court the injunction was refused. On appeal the Court of Civil Appeals affirmed, saying:

"Appellant having in said suit instituted a proceeding to condemn the right of way over appellee's land, and taken possession of said right of way thereunder and proceeded to construct its roadbed across appellee's said land, and appellee having filed his amended answer, specifically pleading his damages because of said condemnation *and appropriation* of his said land before the order had, granting appellant's motion to dismiss its condemnation suit, we are of the opinion that appellant could not, by thus taking a voluntary nonsuit, upon this state of the record, deprive appellee of his right to be heard in said court and in said suit for his damage; and that the court, notwithstanding said nonsuit granted, retained jurisdiction to hear and determine the question of said damage, irrespective of the amount of the same. Howard v. McKenzie, 54 Texas 189; Cunningham v. Wheatly, 21 Texas 184; Williams v. Williams, 38 S.W. 261; Cyc. vol. 15, pp. 942, 943; Revised Statutes, Art. 4471, as amended by the act of 1899, p. 105, Sayles' Supp. sudb. 3, p. 477; City of El Paso v. Coffin, 40 Texas Civ. App., 54, 88 S.W. 502; G. ,C. & S. F. Ry. Co. v. Tacquard, 3 Willson, Civ. Cas. Ct. App. Sec. 141."

This Court in the case of Brazos River Conservation & Reclamation Dist. v. Allen (141 Texas 208, 171 S.W. 2d 842) cited the Kansas City, M. & O. Ry. Co. of Texas case as authority for the proposition that the right to abandon the purpose of taking may be lost by taking possession of the property. In the Allen case the Reclamation District sough to abandon its condemnation proceeding after an award by the commissioners had been made and possession of the land taken by depositing the amount of the award with the county clerk as provided in Article 3268, Vernon's Annotated Texas Civil Statutes. In addition, the Reclamation District had filed a new petition for condemnation of the same land before the judge of the same county court as the first proceeding. The landowner filed suit in District Court to prevent the hearing of the second condemnation suit. This Court affirmed the judgment of the Court of Civil Appeals restraining the Reclamation District from pro-

ceeding in the second suit until the first condemnation suit was finally disposed of. The court said that the District had pro- ceeded so far with the first condemnation suit that it would be manifestly unjust and prejudicial to condemnee to permit the condemnor to dismiss or abandon its suit over the condemnee's protest. The court further said:

"We do not discuss the authorities relating to the right to abandon a condemnation proceeding, that is, to abandon the project or the purpose of taking the property, for here there is no intention to abandon the proceeding in that sense. The purpose is to dismiss the first suit and to take the same property and other property in a second proceeding. *It may be observed, however, that the right to abandon the project or to abandon the purpose of taking the property may be lost by taking possession of the property.* Kansas City M. & O. Ry. Co. v. Kirby, Texas Civ. App., 150 S.W. 228, application for writ of error refused; Leonard v. Small, Texas Civ. App., 28 S.W. 2d 826, application for writ of error refused; Nevada & M. R. Co. v. Le Lissa, 130 Mo. 125, 15 S.W. 366; Guaranty Loan & Trust Co. v. Helena Improvement District, 148 Ark. 56, 228 S.W. 1045; United States Fidelity & Guaranty Co. v. City of Ashville, 4 Cir., 85 F. 2d 966; note 121 A.L.R. 12, 72-76." (Emphasis added).

The case of South Carolina State Highway Dept. v. Bobotes, (1936) 180 S.C. 183, 185 S.E. 165, 121 A.L.R. 1, together with the exhaustive annotation in 121 A.L.R. on page 12, thoroughly discusses the cases dealing with the right of the condemnor to dismiss or abandon his proceedings. In that case it is said:
"* * * There is a well-defined point of time or stage of the proceedings after which the right to abandon is lost. The vesting of the owner's right to compensation is considered the pivotal fact which determines the incidence of that stage of the proceedings, and such vesting of the right to compensation *is concurrent with the taking of the property becoming complete.* The vesting of the right to compensation and the completed taking are reciprocal and correlative, though the latter determines the former. The taking is said to become complete, in so far as it perfects the right to compensation, in either of two cases: First, *from an actual viewpoint, that is, upon physical entry and appropriation of the property by the condemnor to the contemplated public use;* second, from a procedural standpoint, that is, that particular stage of the proceedings at which ownership of the property is divested and transferred to the condemning party." (Emphasis added.)

One page 16, *Id,* the general rule as to when an abandonment may be made is stated to be "that in the absence of a statute fixing the time within which a discontinuance may be had, an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested * * *." Further, on page 19, *idem,* it is stated that the cases may be divided into two groups, "one holding that by confirmation of the award the rights of the parties are vested and the abandonment is then precluded, and the other holding that the rights of the parties are not vested until the award has been paid or secured, *or the land is occupied,* and that until such time the proceedings can be abandoned." (Emphasis added.)

The Texas Constitution, Art. 1, Sec. 17, prohibits the taking of property without adequate compensation, unless by consent; and further provides that when taken, except by the State, such compensation shall be first made or secured by a deposit of money. To hold with the majority is to permit a condemnor to take possession of property and use it without complying with the Constitutional provision. It permits use of property and then the payment of its value long after the taking and use and only at the end of long drawnout litigation. See also 16 Texas Jur. 772, Sec. 431, et seq.; 6 Nichols On Eminent Domain, pp. 187-190, Sec. 26.42; *Id.,* p. 204, Sec. 26.46; 30 C.J.S. 8, Sec. 335, b.

The majority seeks to avoid the effect of the Allen and Thompson cases (Thompson v. Janes, 1952, 151 Texas 495, 251 S.W. 2d 953) by saying that in each of these cases possession of the property was gained by legal, lawful means—in the Allen case by making the deposit after there had been a legal award, and in the Thompson case by consent. The majority say in such cases the condemnor may not dismiss or abandon his proceedings without restoring possession. They say in the case at bar the District did not gain possession legally, and are trespassers as to the land above the 85-foot contour, and therefore they do not have to restore possession as a prerequisite to a dismissal or abandonment. This reasoning puts a premium on unlawful and illegal entries into another's premises and encourages condemning authorities to take possession of condemnee's property illegally and unlawfully if the condemnor wants to preserve his right to dismiss, abandon, or change tribunals. With this reasoning I cannot agree.

There is one other point on which I am in disagreement with

the majority and that is that a title dispute exists as to the land above the 75-foot contour line. When the District filed its condemnation proceeding in County Court and made no mentian of any rights, claims or easements it maght have above the 75-foot contour line, it admitted the Cartwrights' title to such land, and cannot be heard to dispute such title in the condemnation proceedings. I readily agree that this admission is only binding so long as the condemnation proceedings remain in the County Court. The District must remain in the County Court and cannot dismiss these proceedings since it has possession of the Cartwright's land and is unable to restore the status quo as it existed prior to filing the County Court proceedings.

By filing its petition of condemnation in the County Court seeking condemnation of the land between the 75 and 94-foot contour lines without mentioning or claiming any rights under the 1927 easement, the District admitted the title of the Cartwrights to all the land sought to be condemned. Houston North Shore Ry. Co. v. Tyrrell, 1936, 128 Texas 248, 98 S.W. 2d 786, 108 A.L.R. 1508.

The Tyrrell case came to this court on certified question. The Railway Company filed its petition for condemnation of certain land in the County Court-at-Law of Harris County, Texas. Railway Company asked for condemnation of sufficient land for their right-of-way and joined all claimants to any right or title in this strip of land. It further alleged that it was operating trains over the right-of-way sought to be condemned by virtue of certain right-of-way deeds theretofore given it by some of those claiming to own rights in the right-of-way used. Its pleadings alleged that the right-of-way easement contained a condition subsequent; that the Railway Company had complied with every requirement contained in the deed and it still owned the easement. Certain claimants alleged the Railway Company had violated the conditions subsequent and therefore Railway Company had lost its title to the right-of-way in favor of these claimants.

Commissioners were appointed and a hearing had. The condemnee claimants objected to the proceeding on the ground that under the Railway Company's pleadings there was no jurisdiction to proceed before the commissioners. The hearing proceeded to an award, and condemnees appealed to the County Court-at-Law. A hearing was had in that Court and much evidence was heard. The condemnees were still insisting on their objection to the jurisdiction to hear the condemnation proceed-

ing. At the end of the hearing the trial court ordered that condemnors take nothing and dismissed the cause "for the reason that there was a failure to prove jurisdictional facts." On appeal the Court of Civil Appeals certified a question as to the correctness of the trial court's ruling that it did not have jurisdiction. Judge Smedley, in an opinion adopted as the opinion of the Supreme Court, answered that the trial court had erred in failing to take jurisdiction.

One of the contentions of condemnees was that Railway Company, in its pleadings regarding its easement under the deed, was claiming a title to the land and therefore could not condemn under the condemnation statutes. The Court said:

"The narrowed question is: Do the allegations and proof of appellants' present assertion of title to the easement created by the deed operate as a bar to their acquisition of an unconditional easement by condemnation? 'A party cannot proceed to condemn land as the property of another and then in that same proceeding set up a paramount right or title in itself either by prescription, dedication or otherwise.' Lewis' Eminent Domain (3rd Ed.) Sec. 441,, vol. 2, p. 1137. If the petitioner in condemnation claims the fee title to the property, his petition should be dismissed. Colorado M. Railway Company v. Croman, 16 Colo. 381, 27 p. 256. 'Unless title in the condemnee is admitted the county court is without jurisdiction.' McInnis v. Brown County Water Improvement District No. 1 (Texas Civ. App.) 41 S.W. 2d 741, 744 (application for writ of error refused). The reasons for the foregoing general rules are: That there is irreconcilable inconsistency between an allegation by the condemnor of the entire title, or a paramount title, in himself, and the taking of the property of another by the proceeding; that condemnation rests upon necessity, and there can be no necessity to acquire what one already owns; and that the county court is without jurisdiction to try title to real property. * * *"

In discussing the allegations of Railway Company regarding its existing easement under the deed, this Court said, "this allegation is in effect a representation or admission by appellants [Railway Company] that in the trial of the condemnation proceeding the titles of the respective parties shall be regarded and treated as if the title under the deed were terminated by the breach of its conditions at the time of the trial." Bot. 2nd. col., p. 794. This Court upheld the right of the Railway Company to condemn in the County Court in spite of the pleadings of title under the deed.

It is such a well recognized rule of law that a condemnor, by filing his petition in County Court, recognizes the title to the property to be vested in condemnee, and condemnor cannot attack or question condemnee's title, that I shall cite no additional authorities, nor write further on this phase.

To summarize my position: District cannot dismiss its proceedings in County Court to condemn the land between the 75 and 94-foot contour lines because it has taken possession of said land, still holds posession, and cannot return same to the Cartwrights. Being required to proceed with its condemnation of these lands in the County Court, District cannot be heard to dispute Cartwright's title, and therefore no title dispute can arise regarding the land between the 75 and 94-foot contour line. This being true, the District should be required to continue with its condemnation of the property between the 75 and 94-foot contour line in the County Court and its petition in District Court covering this land should be dismissed. As to the land below the 75-foot contour line there can be, and is, a title dispute which can only be determined in the District Court and such condemnation as may be ·necessary can also be had in that same District Court suit, under the provisions of Art. 3269, Vernon's Ann. Texas Civ. Stats.

Opinion delivered November 11, 1959.