MISS WILLIE O. SIMS v. MRS. ODIE MAE HAGGARD ET AL

No. A-8015. Decided May 3, 1961
Rehearing overruled May 31, 1961
(346 S. W. 2d Series 110)

*L. F. Burge,* of Longview, for petitioner.

*Carney & Mays,* of Atlanta, for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit for reformation of two warranty deeds and for removal of cloud on title brought by petitioner, as plaintiff, against respondents, as defendants, in the District Court of Marion County, Texas. The parties will be referred to, in this opinion, as they were in the trial court.

The case was tried before the court without a jury, and judgment was rendered in favor of plaintiff. The trial court

filed findings of fact and conclusions of law supporting his judgment. Defendants appealed and the Court of Civil Appeals reversed the judgment of the trial court, and remanded the cause to the trial court for a retrial. 336 S.W. 2d 866. Plaintiff as petitioner applied to this Court for writ of error.

The ground upon which the Court of Civil Appeals reversed and remanded the case was that plaintiff, in making her case, had proved that Mrs. Fannie Sims owned an interest in the lands sought to be recovered, and, therefore, plaintiff could not have a reformation of the two deeds, nor a recovery of the land found by the trial court to be erroneously included in the description by metes and bounds in the two deeds, without making Mrs. Fannie Sims a party.

The facts of the case, together with the findings of fact and conclusions of law are fully set out in the opinion of the Court of Civil Appeals. We shall refer only to such matters as are necessary for an understanding of this opinion.

On October 9, 1947, Mr. W. E. Haggard, then the husband of defendant, but deceased prior to the filing of this suit, contacted J. B. Zachry, Sr., an uncle of plaintiff, with regard to purchasing the south forty acres of land out of a tract of 181½ acres owned by plaintiff in Marion County, Texas. Plaintiff, a resident of Dallas, Texas, answered her uncle's letter and stated she would sell the 40 acres for $40.00 per acre. On receipt of this information, a warranty deed was prepared in Jefferson, Texas. There was no testimony as to who prepared the deeds. J. B. Zachry, Sr. was dead at the time of trial, and J. B. Zachry, Jr., who sent the second deed to plaintiff, testified he did not prepare either deed, and that it was his best recollection that Mr. Haggard had both deeds prepared. Plaintiff testified she did not have either deed prepared, but each was sent to her from one of the Zachrys in Jefferson. The cost of preparing the deed and the revenue stamps was deducted from the purchase price and the balance remitted to plaintiff. The trial court found that Mr. Haggard had each deed sent to plaintiff for her signature and there is evidence to sustain such finding.

The deed of October 9, 1947, was from plaintiff, as grantor, to W. E. Haggard for a cash consideration of $1,600.00 and describes the land as "being the south Forty (S40) acres off of the 241½ acre tract, set apart to Mrs. Fannie Sims and Miss Willie O. Sims, * * * to which reference is made to said cause * * * for a more complete description of the 241½ acres which the Forty (40) acres herein conveyed off of the south end is a

part," and further describes the land conveyed as "the said Forty (40) acres, described by metes and bounds as follows: * * *" (here follow the field notes that set out a tract of land containing 70.86 acres of land, and ending) "containing Forty (40) acres of land, more or less."

After the receipt of this deed, properly signed and acknowledged, Mr, Haggard paid the $1,600.00 consideration called for to the Zachrys, and J. B. Zachry, Jr., remitted the same, less the cost of the revenue stamps and preparing the deed, to plaintiff at her home in Dallas. Mr. Haggard then contacted J. B. Zachry, Jr., and stated he would like to buy another forty acres of plaintiff's land lying immediately north of and adjoining this first forty acres and at the same price of $40.00 per acre. Haggard offered to pay $400.00 cash on delivery of the deed, and to execute his three vendor's lien notes for $400.00 each, bearing 8% interest and payable one each year for the next consecutive three years. This offer was communicated to plaintiff and she accepted it. The second deed was prepared by Haggard (according to the finding of the trial court) and delivered to J. B. Zachry, Jr., who in turn transmitted it to plaintiff for signature and acknowledgment, and she returned it to Jefferson for delivery to Mr. Haggard. This second deed was dated October 22, 1947.

While this deed was in plaintiff's possession in Dallas, and prior to its being returned for delivery to Mr. Haggard, Mr. Haggard employed Mr. Barker, a licensed State surveyor, to run out the field notes of the first tract and establish its corners on the ground. This Mr. Barker did, and made an affidavit to Mr. Haggard that the description in the first deed covered 70.86 acres of land.

Plaintiff signed and acknowledged this last deed October 22, 1947, and returned it to J. B. Zachry, Jr., who delivered it to Mr. Haggard, collected the cash payment and Mr. Haggard's three vendor's lien notes. J. B. Zachry, Jr., remitted the balance of the cash payment, after deducting the cost of the revenue stamps and charge for preparing the deed, to plantiff. This second deed described the land as "Forty (40) acres of land more or less, a part of a 241½ acre tract set apart to Mrs. Fannie Sims and Miss Willie Sims * * * ", and describing said tract as beginning at the northeast corner of "a 40 acre tract conveyed by Willie O. Sims to W. E. Haggard dated October 10th, 1947"; thence north 908 vrs.; thence west across the 241½ acre tract 440.9 vrs.; thence south 908 vrs., "to the N. W. corner of the 40 acre tract conveyed by Willie O. Sims to W. E. Haggard dated October 10th, 1947; thence East along the North

boundary line of the Haggard 40 acre tract, 440.9 vrs. to the E. B. Line of said 241½ acre tract and the N. E. corner of the Haggard 40 acre tract and to the place of beginning, containing 40 acres of land and being in the Robert H. Potter H. R. Survey."

Both deeds were promptly recorded in Marion County, Texas. Mr. Haggard immediately went into possesion of both tracts according to their field notes and fenced both tracts in one block. This block contained a total of 141.72 acres rather than 80 acres. This excess is 30.86 acres in each tract for a total of 61.72 acres, or as found by the trial court "77.285 per cent more acres than was intended to be described."

Plaintiff testified that she did not know how to figure the field notes in each deed, but since the correspondence relative to the sale of land in each instance referred to 40 acres at $40.00 per acre; since the consideration stated in each deed was $1,600.00; and since the first deed contained four references to the fact that only forty (40) acres were being conveyed; and the second deed contained six such references that forty (40) acres were being conveyed, she believed each of her deeds covered only forty (40) acres of land. She further testified that she intended to convey only forty acres by each deed, and that she would not have signed and acknowledged the deeds had she known each conveyed more than forty acres, or a total of 70.86 acres in each deed. She further testified that she lived in Dallas at all times prior to the execution of the deeds and until the trial of the case, and that she still lived in Dallas. She testified, and the trial court so found, that she did not discover the mistakes in the deeds until October, 1955, and that she tried to work out a settlement of the matter until October, 1958. She filed her suit in October, 1958, alleging that both parties intended that the deeds convey only 40 acres each, as that was the acreage Mr. Haggard had offered to buy and that was the acreage she had agreed to sell at a price of $40.00 per acre and that was the price Mr. Haggard had paid her. She sought reformation of the deeds on the grounds of a mutual mistake. Plaintiff also pleaded that if such were not a mutual mistake, Mr. Haggard knew the field notes in each deed covered 70.86 acres; that his conduct amounted to a fraud on plaintiff and she sought reformation of both deeds on this ground also. Plaintiff prayed that the title to the excess acreage "conveyed by virtue of the execution of the two deeds * * * be divested out of the defendants and vested in the plaintiff, and further, that she have judgment against said defendants removing any cloud that has been cast upon her title by the 77.285 percent excessive acreage", and for other and further relief.

The trial court made findings that it was the intention of plaintiff to sell and convey only 40 acres by each of her deeds; that it was the intention of W. E. Haggard to purchase only 40 acres by each deed; and that the land was sold for $40.00 per acre and not by the tract described. Based on such findings, the trial court further found that the field notes description covered 70.86 acres by mutual mistake of both parties, and each deed should be reformed to carry out the intention of the parties. The trial court also found that in the event he was mistaken as to the mutual mistake, and that if Mr. Haggard knew of the excess acreage conveyed by each deed, then Mr. Haggard was guilty of a fraud upon plaintiff, and the deeds should be reformed. The trial court set out a correct description of each of the two forty (40) acre tracts which both parties intended to convey, and incorporated in his judgment an attached map, or plat, showing the location of the 80 acres which he found were intended to be sold. This plat also shows the excess acreage covered by the field notes in the two deeds, and which acreage the judgment restored to plaintiff.

■ The Court of Civil Appeals reversed the judgment because it felt plaintiff had proved that Mrs. Fannie Sims had some interest in the land involved in this suit and therefore Mrs. Fannie Sims was a necessary party to this litigation. Mrs. Fannie Sims was not a party to either deed. Neither deed purported to convey any land belonging to Mrs. Fannie Sims. If she had any interest in this land she, or her successors in title, still own such interest, and the judgment entered here in no manner affects that interest. The only parties to the deeds were the plaintiff and W. E. Haggard. Defendants are the successors in title to such interest as W. E. Haggard received. All parties whose interest in the land can be affected by the judgment are already parties to this litigation. Defendants' only claim to title to the land sued for herein is under and by virtue of the two deeds from plaintiff, and the statue of limitation.

"In an action for the reformation [of a contract] all parties to the contract to be reformed whose interests may be affected, (diminished or enlarged) by a judgment are necessary parties." Le Cuno Oil Company v. Smith, Tex. Civ. App., 1957, 306 S. W. 2d 190, 195, n.r.e., and 36 Tex. Jur. 767, §28.

"It does not appear that Mrs. Henenberg has any separate estate in the land. If, in fact, she has any, it will not be affected by the judgment. Hence she is not an indispensable party to the suit." Henenberg v. Winn, Tex. Civ. App., 1927, 1 S.W. 2d 432, wr. ref.

"Reformation of written instruments may be had by the immediate parties thereto and by those standing in privity with them, but a person not a party or privy to the transaction in question with a substantial interest therein may not maintain the action. * * * It has been held that the complete title need not be in plaintiff to enable him to maintain the suit, and that a legal or equitable interest is sufficient." 76 C.J.S. 400, §47.

We hold that Mrs. Fannie Sims is not a necessary party to this action, and that the Court of Civil Appeals erred in sustaining defendant's third point of error, and in reversing and remanding this case, in order that she might be made a party.

■ Defendants have filed no application for writ of error; therefore, she cannot obtain a modification or reversal of the judgment of the Court of Civil Appeals. Lower Nueces River Water Supply Dist. v. Cartwright, 1959, 160 Tex. 239, 328 SW. 2d 752 (4); Vanover v. Henwood, 1941, 136 Tex. 348, 150 S.W. 2d 785; 3 Tex, Jur. 2d 517, §262. However, defendants are entitled to have us examine their brief in the Court of Civil Appeals to determine whether or not we can affirm that court's judgment upon a ground different from the one on which the Court of Civil Appeals bases its judgment. Vanover v. Henwood, p.787 (3, 4), supra, and authorities therein cited; K & G Tool & Service Co., Inc. v. G & G Fishing Tool Service, 1958, 158 Tex. 594, 314 S.W. 2d 782 (10).

The Court of Civil Appeals expressly overruled the first, second, fourth, fifth, sixth and seventh points and stated that it would affirm the trial court's judgment were it not for its holding that Mrs. Fannie Sims was a necessary party.

Defendant's First Point in the Court of Civil Appeal was that the trial court erred in not holding that the four year statute of limitation was a complete bar to plaintiff's cause of action. The Court of Civil Appeals discussed this point and overruled the same. The Fourth Point states that the trial court erred in not holding that the defendants had good and perfect title to the land sued for under the five and ten year statute of limitation. The Fifth Point states that there is no evidence to support the trial court's finding that W. E. Haggard perpetrated a fraud on plaintiff, or that there was a mutual mistake in the preparation of the deeds in question. If we sustained either or all of these points we would be required to order a reversal and "rendition" of this cause in favor of defendant. Such action would be a modification of the judgment of the Court of Civil Appeals reversing and remanding the cause, and we are not authorized to take such action. Lower Nueces

River Water Supply Dist. v. Cartwright, supra; Vanover v. Henwood, supra, and K & G Tool & Service Co., Inc. v. G & G Fishing Tool Service, supra. We have examined the defendant's second, third, sixth and seventh points in the Court of Civil Appeals, and we hold that the Court of Civil Appeals was correct in overruling them.

■ Defendants state that no judgment should be given for the excess because the deeds purport to convey forty acres of land "more or less", and that the "more or less" covers the excess acreage in each deed. "Where land is described as containing a specified number of acres 'more or less', or 'about' a certain number, or a specified number 'by estimation', such words are intended to cover a reasonable excess or deficit, and a slight variation does not afford grounds for relief; but if the difference between the real and represented quantity is very great, equity may correct." 76 C.J.S. 390, §42(2). An excess of 61.72 acres, or 77.285% is certainly not a slight discrepancy, but a gross discrepancy against which equity will grant relief when prayed for.

■ This is an action to reform the two deeds and to remove the cloud cast on plaintiff's title to the 70.86 excess acreage described in the two deeds. The suit was not brought as a statutory trespass to try title suit; therefore, under the record as made herein, there was no necessity for the trial court to divest title out of the defendants and vest title to such excess acreage in plaintiff.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court modified so as to reform the two deeds as prayed for by plaintiff, and to remove the cloud to plaintiff's title, such cloud having been cast by the inclusion of the excess acreage—above 80 acres—in the two deeds, and as such excess acreage is shown on the plat accompanying, and made a part of, the trial court's judgment, and as so modified, the trial court's judgment is affirmed.